No. 104,262

STATE OF KANSAS, *Appellee*, v. RAYMOND LONNIE RUGGLES, *Appellant.*

(304 P.3d 338)

Opinion filed June 21, 2013.

*Korey A. Kaul,* of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*David R. Maslen,* assistant county attorney, argued the cause, and *Derek Schmidt,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Raymond Ruggles pleaded guilty to two counts of aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(3)(B). Because Ruggles was over 18 years old when he committed these crimes, the district court, pursuant to K.S.A. 21-4643(a)(1)(C), imposed a life sentence with a mandatory minimum term of 25 years' imprisonment for each count and ordered the sentences to run consecutively. On appeal, Ruggles argues that K.S.A. 21-4643(a)(1)(C) violates the proscription against cruel and unusual punishment of the Eighth Amendment to the United States Constitution because a hard 25 life sentence is disproportionate to the crime K.S.A. 21-3504(a)(3)(B) defines, *i.e.*, soliciting a child under 14 years of age to "engage in any lewd fondling or touching of the person of another with the intent to arouse or satisfy the sexual desires of the child, the offender or another."

## FACTS

On May 12, 2009, the State charged Ruggles with four off-grid crimes: one count of rape in violation of K.S.A. 21-3502(a)(2), one count of aggravated criminal sodomy in violation of K.S.A. 21-3506(a)(1), and two counts of aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(3)(B). According to the probable cause affidavit filed with the complaint, on May 5, 2009, Ruggles' 11-year-old stepdaughter, J.L.S., reported to law enforcement that Ruggles had been sexually molesting her since she was 5 years old. J.L.S. described the sexual molestation as Ruggles having sexual intercourse with her, placing his penis inside her mouth, and performing oral sex on her. Additionally, J.L.S. told law enforcement that Ruggles had attempted to have her and her 13-

year-old sister, K.A.B., masturbate him. After speaking with J.L.S., law enforcement spoke with K.A.B. who also said that Ruggles had attempted to have her and J.L.S. masturbate him at their residence. K.A.B. said that the incident occurred a few months before and that Ruggles had told them that their mother would be arrested and placed in jail if they told anyone about the incident.

Pursuant to a plea agreement, Ruggles pleaded guilty to the two counts of aggravated indecent liberties with a child in exchange for the State dismissing the rape and aggravated criminal sodomy charges. At the plea hearing, the prosecutor gave the following factual basis for the guilty pleas:

"This case started out as a report to the school counselor . . . on May 5th of this year. At that time one of the stepdaughters of [Ruggles] met with [the counselor] and told her that she was being sexually abused by her father.

"At that time this victim knew [Ruggles] as her father. She did not know that she was a stepchild.

"She told the counselor while she's crying that she's not a virgin anymore, that her father had told her not to tell anyone because if she did her mother would go to jail along with him. This 13-year-old told the counselor about [Ruggles] molesting her repeatedly since she was five or six years old, sometime two to three times a week. This occurred here in Montgomery County on numerous occasions.

"We also have a report regarding another stepdaughter named [K.A.B.] who reports the same type of activity from [Ruggles]. It talks—she also talked with other counselors and gave an interview in regard to a situation where [Ruggles] asked her and her sister—the previous stepsister—to masturbate [Ruggles], and this also occurred here in Montgomery County within the statute of limitations.

"At the time that all these events occurred, both of these victims were under 14 years of age. All of these offenses occurred after July 1, 2006, and [Ruggles] was over 18 years of age at the time these offenses were committed."

The district court accepted Ruggles' guilty pleas and found him guilty of the two counts of aggravated indecent liberties with a child.

Prior to sentencing, Ruggles filed a document entitled "Notice of Defendant's Objection to Sentencing Pursuant to K.S.A. 21-4643," wherein Ruggles argued that based on the three factors found in *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978), imposing hard 25 life sentences in this case would be disproportionate to his crimes of conviction and, therefore, violate the Eighth Amendment to the United States Constitution and § 9 of the Kan-

sas Constitution Bill of Rights. The State filed a response arguing that application of the *Freeman* factors showed that imposing hard 25 life sentences in this case would be constitutionally permissible.

At sentencing, the district court asked defense counsel for comments or evidence in support of his written objection to sentencing. Defense counsel did not present any evidence, noting that his "pleading kind of speaks for itself" and stating that imposing hard 25 life sentences in this case would constitute cruel and unusual punishment primarily because "under Kansas law there exists other more serious offenses that are punished less severely than these offenses under this statute. Namely, if Mr. Ruggles had committed involuntary manslaughter or second degree murder he would receive less punishment than he would under [K.S.A. 21-4643]." Defense counsel went on to argue that the district court should impose concurrent rather than consecutive life sentences.

After hearing arguments from the State, the district court ruled that K.S.A. 21-4643 did not violate either the Eighth Amendment to the United States Constitution or § 9 of the Kansas Constitution Bill of Rights. Accordingly, the district court proceeded to impose a hard 25 life sentence for each of Ruggles' convictions and ordered the sentences to run consecutively. Ruggles filed a timely notice of appeal.

### CRUEL AND UNUSUAL PUNISHMENT

On appeal, Ruggles argues that based on a categorical proportionality analysis, see *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), a hard 25 life sentence for an offender age 18 years or older who merely solicits a child under 14 years of age to "engage in any lewd fondling or touching of the person of another with the intent to arouse or satisfy the sexual desires of the child, the offender or another," see K.S.A. 21-3504(a)(3)(B), is disproportionate and, thus, violates the proscription against cruel and unusual punishment of the Eighth Amendment to United States Constitution.

Notably, Ruggles did not raise an Eighth Amendment categorical challenge to his sentence before the district court. This is un-

surprising given the fact that *Graham* was decided after Ruggles was sentenced. Regardless, this court has recently said:

"[I]n contrast to issues involving a claim of cruel or unusual punishment under § 9 of the Kansas Constitution Bill of Rights or a case-specific proportionality claim of cruel and unusual punishment under the Eighth Amendment to the United States Constitution, *a categorical proportionality analysis under the Eighth Amendment does not require a review of the district court's factual findings. Instead, only questions of law are implicated.*" (Emphasis added.) *State v. Mossman*, 294 Kan. 901, 925, 281 P.3d 153 (2012).

Furthermore, in *State v. Gomez*, 290 Kan. 858, 866, 235 P.3d 1203 (2010), we noted that a categorical challenge could potentially be raised for the first time on appeal under the exception for questions of law that are determinative of the case and that arise on proven or admitted facts.

Given the nature of a categorical challenge, we conclude that Ruggles can bring such a challenge for the first time on appeal. This court applies an unlimited standard of review to Ruggles' categorical challenge to his sentence. See *Mossman*, 294 Kan. at 925. Because Ruggles does not argue on appeal that his sentence violates § 9 of the Kansas Constitution Bill of Rights or raise a case-specific proportionality claim under the Eighth Amendment, he has abandoned those issues. See *State v. McCaslin*, 291 Kan. 697, 709, 245 P.3d 1030 (2011) (An issue not briefed by the appellant is deemed waived and abandoned.).

Ruggles' challenge to his life sentences necessarily questions the constitutionality of Jessica's Law, K.S.A. 21-4643, as applied to offenders in the same category as Ruggles. A statute is presumed constitutional, and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court has the authority and the duty to do so. *State v. Laturner*, 289 Kan. 727, 735, 218 P.3d 23 (2009); see also *State ex rel. Six v. Kansas Lottery*, 286 Kan. 557, 562, 186 P.3d 183 (2008) ("It is not the duty of this court to criticize the legislature or to substitute its view on economic or social policy; it is the duty of this court to safeguard the constitution.").

The Eighth Amendment, which has been extended to the states under the Fourteenth Amendment, see *Robinson v. California*,

370 U.S. 660, 667, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1962), provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend VIII. In *Graham*, the Court noted that "[t]he concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.' [Citation omitted.]" 130 S. Ct. at 2021.

Regarding the concept of proportionality, the *Graham* Court recognized that its prior

"cases addressing the proportionality of sentences fall within two general classifications. The first involves challenges to the length of term-of-years sentences given all the circumstances in a particular case. The second comprises cases in which the Court implements the proportionality standard by certain categorical restrictions on the death penalty." 130 S. Ct. at 2021.

The *Graham* Court went on to explain the group of cases falling within the second classification, which are applicable to this case:

"The second classification of cases has used categorical rules to define Eighth Amendment standards. The previous cases in this classification involved the death penalty. The classification in turn consists of two subsets, one considering the nature of the offense, the other considering the characteristics of the offender. With respect to the nature of the offense, the Court has concluded that capital punishment is impermissible for nonhomicide crimes against individuals. [Citations omitted.] In cases turning on the characteristics of the offender, the Court has adopted categorical rules prohibiting the death penalty for defendants who committed their crimes before the age of 18, [citation omitted], or whose intellectual functioning is in a low range. [Citations omitted.]

"In the cases adopting categorical rules the Court has taken the following approach. The Court first considers 'objective indicia of society's standards, as expressed in legislative enactments and state practice' to determine whether there is a national consensus against the sentencing practice at issue. [Citation omitted.] Next, guided by 'the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose,' [citation omitted], the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution." 130 S. Ct. at 2022.

In *Graham*, the defendant was 16 years old when he and an accomplice attempted to rob a barbeque restaurant in Jacksonville,

Florida. During the attempted robbery, the accomplice used a metal bar to strike the back of the restaurant manager's head, resulting in the manager having to get stitches for his head injury. The defendant was later arrested and charged as an adult under Florida law with armed burglary with assault or battery, a first-degree felony carrying a maximum penalty of life imprisonment without the possibility of parole, and attempted armed robbery, a second-degree felony carrying a maximum penalty of 15 years' imprisonment. The defendant ultimately pleaded guilty to both crimes. The trial court withheld adjudication of guilt as to both charges and sentenced the defendant to concurrent 3-year terms of probation. 130 S. Ct. at 2018.

While on probation and 34 days before his 18th birthday, the defendant, after fleeing from police, was arrested on suspicion that he had been involved in two robberies. The district court found that the defendant had violated his probation, found him guilty of the earlier crimes, and sentenced him to life imprisonment without the possibility of parole for the armed burglary and 15 years' imprisonment for the attempted armed robbery.

The *Graham* Court framed the issue to be decided on appeal as whether the Eighth Amendment permitted a juvenile offender to be sentenced to life imprisonment without the possibility of parole for a nonhomicide crime. Framing the issue in this manner led the Court to conclude that the case before it was raising a "categorical challenge to a term-of-years sentence" because it implicated a particular type of sentence (a life sentence without the possibility of parole) as applied to an entire class of offenders (juveniles) who had committed a range of crimes (nonhomicide crimes). 130 S. Ct. at 2022-23. Despite the fact that the Court had never applied a categorical proportionality analysis to a non-death-penalty sentence, the Court believed that such an approach was necessary to address the issue before it. 130 S. Ct. at 2023. Furthermore, by framing the categorical challenge in the manner that it did, the *Graham* Court combined the two subsets of categorical analysis (nature of the offense and the characteristics of the offender) into a single analysis.

With regard to the first prong of the categorical analysis (*i.e.*, objective indicia of society's standards, as expressed in legislative enactments and state practice, to determine whether there is a national consensus against the sentencing practice at issue), the Court concluded that though a majority of states had statutes allowing a juvenile to be sentenced to life imprisonment without the possibility of parole for a nonhomicide crime, the imposition of such a sentence was exceedingly rare. This led the Court to conclude that a national consensus had developed against the sentencing practice. 130 S. Ct. at 2026.

For the second prong (*i.e.*, determination in the exercise of the Court's own judgment, whether the punishment in question violates the Constitution), the Court noted that that "judicial exercise of independent judgment requires consideration of the culpability of the offender at issue in light of their crimes and characteristics, along with the severity of the punishment in question." 130 S. Ct. at 2026.

In looking at the culpability of the offender, the Court noted that in *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), it reasoned that because juveniles have a lessened culpability, they are less deserving of the most severe punishments. In *Roper*, the Court stated that compared to adults, juveniles have a " 'lack of maturity and an underdeveloped sense of responsibility' "; they "are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure;" and their characters "are not as well formed." *Roper*, 543 U.S. at 569-70. Given these salient characteristics, the *Roper* Court noted that "[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." 543 U.S. at 573. Accordingly, "juvenile offenders cannot with reliability be classified among the worst offenders." 543 U.S. at 569. Based on these statements from *Roper*, the *Graham* Court concluded that "[a] juvenile is not absolved of responsibility for his actions, but his transgression 'is not as morally reprehensible as that of an adult.' [Citation omitted.]" *Graham*, 130 S. Ct. at 2026.

After considering the limited culpability of juvenile offenders, the Court then noted that it had previously "recognized that defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers." *Graham*, 130 S. Ct. at 2027. The Court then observed that a life sentence without the possibility of parole is the second most severe penalty permitted by law and that the sentence shares some characteristics with that of a death sentence—namely, a life

"sentence alters the offender's life by a forfeiture that is irrevocable. It deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive clemency—the remote possibility of which does not mitigate the harshness of the sentence. [Citation omitted.] As one court observed in overturning a life without parole sentence for a juvenile defendant, this sentence 'means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the convict], he will remain in prison for the rest of his days.' [Citation omitted.]" *Graham*, 130 S. Ct. at 2027.

Based on the limited culpability of juvenile nonhomicide offenders and the severity of a life sentence without the possibility of parole, the *Graham* Court concluded that there was not a legitimate penological reason for imposing such a sentence upon a juvenile nonhomicide offender. Accordingly, the Court held that sentencing a juvenile nonhomicide offender to life imprisonment without the possibility of parole violated the Eighth Amendment to the United States Constitution. In explaining its holding, however, the *Graham* Court stated:

"A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. It is for the State, in the first instance, to explore the means and mechanisms for compliance. It bears emphasis, however, that while the Eighth Amendment forbids a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does forbid States from making the

judgment at the outset that those offenders never will be fit to reenter society." *Graham*, 130 S. Ct. at 2030.

After *Graham*, the Supreme Court held in *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), that mandatory sentences of life without parole for juveniles committing murder constituted cruel and unusual punishment under the Eighth Amendment. In reaching this conclusion, the *Miller* Court relied in part on *Graham*, which the *Miller* Court described as belonging to a strand of cases adopting

"categorical bans on sentencing practices based on *mismatches between the culpability of a class of offenders and the severity of a penalty*. See *Graham*, 560 U.S. at ___ [, 130 S. Ct. at 2022-23] (listing cases). So, for example, we have held that imposing the death penalty for nonhomicide crimes against individuals, or imposing it on mentally retarded defendants, violates the Eighth Amendment. See *Kennedy v. Louisiana*, 554 U.S. 407, 128 S. Ct. 2641, 171 L. Ed. 2d 525 (2008); *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002). Several of the cases in this group have specially focused on juvenile offenders, because of their lesser culpability. Thus, *Roper* held that the Eighth Amendment bars capital punishment for children, and *Graham* concluded that the Amendment also prohibits a sentence of life without the possibility of parole for a child who committed a nonhomicide offense." (Emphasis added.) *Miller*, 132 S. Ct. at 2463.

This quote from *Miller* clearly indicates that in order for an individual to successfully raise a categorical challenge to a sentencing practice, the individual must satisfy the second prong of a categorical proportionality analysis, *i.e.*, he or she must show that, based on the characteristics of the class of offender he or she belongs to and the nature of the offense at issue, the sentencing practice is disproportionate with the offender's culpability. See *Graham*, 130 S. Ct. at 2026 ("[J]udicial exercise of independent judgment requires consideration of the culpability of the offender at issue in light of their crimes and characteristics, along with the severity of the punishment in question.").

Ruggles argues that *Graham* supports his claim that imposing a hard 25 life sentence upon an 18-year-old or older offender who merely solicits a child under 14 years of age to "engage in any lewd fondling or touching of the person of another with the intent to arouse or satisfy the sexual desires of the child, the offender or

another," see K.S.A. 21-3504(a)(3)(B), is unconstitutional. We disagree. Based on the standards elaborated by controlling United States Supreme Court precedent and the categories applicable to this case, we are not convinced that the Eighth Amendment categorically prohibits a hard 25 life sentence from being imposed in cases such as the one before us. In other words, Ruggles' challenge to his life sentences fails because he cannot satisfy the second prong of the categorical proportionality analysis.

Unlike the defendant in *Graham*—who belonged to a category of offenders (*i.e.*, juveniles) traditionally considered as having a lesser culpability for criminal actions and, thus, less deserving of the harshest penalties—there is nothing distinguishable about the category of offender to which Ruggles belongs (*i.e.*, adult offenders) that would warrant special consideration. The law clearly presumes that people 18 years of age or older have reached a level of maturity that renders them fully culpable for the crimes they commit. See K.S.A. 38-101 ("The period of minority extends in all persons to the age of eighteen (18) years . . . .").

With regard to the nature of the offense, we held in *Mossman* that the crime of conviction should serve as the applicable category, which in that case was (like here) aggravated indecent liberties with a child. 294 Kan. at 928; see also *State v. Cameron*, 294 Kan. 884, 281 P.3d 143 (2012) (using aggravated indecent solicitation of a child—the crime defendant was convicted of—as category for analysis). Like the crime under consideration in *Graham*, aggravated indecent liberties with a child is a serious, nonhomicide crime. Although *Graham* established that imposing a life sentence without the possibility of parole upon a juvenile for a nonhomicide crime violated the Eighth Amendment to the United States Constitution, the opinion certainly did not question the constitutionality of imposing such a sentence upon an adult nonhomicide offender or, for that matter, imposing a life sentence *with the possibility of parole* upon either a juvenile or an adult for committing a nonhomicide crime. See *Graham*, 130 S. Ct. at 2030 ("It bears emphasis . . . that while the Eighth Amendment forbids a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender

during his natural life. . . . The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life."); see also *Miller*, 132 S. Ct. at 2470 ("We have by now held on multiple occasions that a sentencing rule permissible for adults may not be so for children. Capital punishment, our decisions hold, generally comports with the Eighth Amendment—except it cannot be imposed on children. [Citations omitted.] *So too, life without parole is permissible for nonhomicide offenses—except, once again, for children."* [Emphasis added.]).

The sentence at issue here, a hard 25 life sentence, is a severe penalty but certainly not as severe as the death penalty or a life sentence without the possibility of parole—the only types of sentences that the United States Supreme Court has thus far found categorically disproportionate and, therefore, unconstitutional when imposed in certain contexts not applicable here. See *Graham*, 130 S. Ct. at 2022, 2030. Pertinent to this case, the United States Supreme Court has held that a life sentence can be constitutionally imposed upon an adult offender guilty of committing a nonhomicide offense. See *Lockyer v. Andrade*, 538 U.S. 63, 70, 77, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003) (upholding sentence of two consecutive prison terms of 25 years to life for third-strike conviction for stealing approximately $150 in videotapes); *Ewing v. California*, 538 U.S. 11, 21, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003) (rejecting Eighth Amendment challenge to a hard 25 life sentence for theft of golf clubs worth $1,200); *Harmelin v. Michigan*, 501 U.S. 957, 962-64, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (upholding sentence of life without possibility of parole for defendant convicted of possessing more than 650 grams of cocaine, although it was his first felony offense); *Rummel v. Estelle*, 445 U.S. 263, 265, 285, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980) (upholding life sentence with possibility of parole, imposed under a Texas recidivist statute, for defendant convicted of obtaining $120.75 by false pretenses, an offense normally punishable by imprisonment for 2 to 20 years).

In discussing the significance of these cases in *Mossman*, we noted that they indicated that

"the Supreme Court allows considerable latitude to a legislature's policy decision regarding the severity of a sentence. A statement made by Justice Kennedy in his concurring opinion in *Harmelin* provides insight into the Court's view of the policy judgment inherent in a proportionality decision. He noted: '[A] rational basis exists for Michigan to conclude the petitioner's crime [of possessing a large quantity of cocaine] is as serious and violent as the crime of felony murder without specific intent to kill, a crime for which "no sentence of imprisonment would be disproportionate." [Citation omitted.]' *Harmelin*, 501 U.S. at 1004 (Kennedy, J., concurring). For purposes of our analysis, it is reasonable to substitute aggravated indecent liberties with a child as the crime referred to in that statement because the Supreme Court has observed that sex offenders represent a particularly serious threat in this country given that they are more likely than any other criminals to commit violent crimes following their release from prison. *McKune v. Lile*, 536 U.S. 24, 32-33, 122 S. Ct. 2017, 153 L. Ed. 2d 47 (2002)." *Mossman*, 294 Kan. at 923-24.

We made similar observations in *State v. Woodard*, 294 Kan. 717, 722, 290 P.3d 203 (2012), regarding application of Jessica's Law sentencing provisions to sex offenses committed upon children under the age of 14:

"The legislative intent underlying Jessica's Law is to protect children by removing perpetrators of sexual crimes against children from society. [Citation omitted.] The United States Supreme Court has observed that sex offenders represent a particularly serious threat in this country and that they are more likely than any other type of offender to commit violent crimes following their release. [Citation omitted.] The State therefore has a particularly compelling interest in using incarceration as a means of protecting its youth from sexual offenders."

The Supreme Court and other courts have expounded at length on the severity of crimes involving the sexual abuse of children and the extent of the harm caused by those crimes. See, *e.g.*, *Kennedy v. Louisiana*, 554 U.S. 407, 468-69, 128 S. Ct. 2641, 171 L. Ed. 2d 525 (2008) (Alito, J., dissenting, joined by Roberts, C.J., and Scalia and Thomas, JJ.) ("Long-term studies show that sexual abuse is 'grossly intrusive in the lives of children and is harmful to their normal psychological, emotional, and sexual development in ways which no just or humane society can tolerate.' ") *New York v. Ferber*, 458 U.S. 747, 758 n.9, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982) ("It has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers

as adults."); *United States v. Nagel*, 559 F.3d 756, 760-61 (7th Cir. 2009) (noting that The Protection of Children from Sexual Predators Act of 1998 "evinces a congressional recognition of the seriousness of attempted sexual enticement of a minor"); *United States v. Searcy*, 418 F.3d 1193, 1198 (11th Cir. 2005) ("[P]ersuasion, inducement, enticement or coercion of a minor to engage in unlawful sexual activity carries an inherent risk of physical injury to the minor."); *State v. Pribble*, 285 S.W.3d 310, 314 (Mo. 2009) ("The nature and the potential social harm of this crime—an adult of at least 21 years attempting to lure a child under 15 years for the purpose of engaging in sexual acts—is indeed serious and alarming. Comparing this to the punishment, it is apparent that such a serious crime may carry with it a serious penalty without running afoul of cruel and unusual punishment.").

A person who is 18 years of age or older who stands convicted of soliciting a child under the age of 14 to engage in lewd fondling or touching has committed a serious offense. Along with the category of offender that Ruggles belongs to, there is nothing discernible about the nature of the offense at issue here that would make us conclude that the Eighth Amendment categorically prohibits a hard 25 life sentence from being imposed in this case. Based on controlling United States Supreme Court precedent, it cannot be said that the legislature went beyond the bounds of the Eighth Amendment when it prescribed a hard 25 life sentence for violators of K.S.A. 21-3504(a)(3)(B) who are 18 years of age or older. Such a sentence naturally serves legitimate penological goals of deterrence and incapacitation. See *Graham*, 130 S. Ct. at 2028. Accordingly, we conclude that imposition of a hard 25 life sentence under Jessica's Law for each of Ruggles' aggravated indecent liberties with a child convictions is not categorically disproportionate and, therefore, not cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

Affirmed.