NOT DESIGNATED FOR PUBLICATION

No. 113,942

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SEAN M. HARDY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Pottawatomie District Court; JEFF ELDER, judge. Opinion filed July 1, 2016. Affirmed.

*Joanna Labastida*, of Kansas Appellate Defender Office, for appellant.

*Amanda G. Voth*, assistant solicitor general, for appellee.

Before GREEN, P.J., MCANANY and ATCHESON, JJ.

*Per Curiam*: Sean M. Hardy pled guilty to one count of indecent liberties with a child and one count of lewd and lascivious conduct. Under K.S.A. 2015 Supp. 22-3717, his indecent liberties with a child conviction required a sentence of lifetime postrelease supervision. Hardy filed a motion to challenge the sentence as unconstitutional under § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution. The trial court denied his motion and imposed lifetime postrelease supervision as part of his sentence. Hardy appeals, arguing the sentence is unconstitutional as applied under the Kansas Constitution and United States Constitution and categorically under the United States Constitution. We disagree and affirm.

1

According to law enforcement, in June or July of 2014, 26-year-old Sean Hardy and 14-year-old M.C.G. were on a camping trip with other family and friends at the Carnahan Recreational Area in Pottawatomie County, Kansas. One night, the two stayed up talking after everyone had gone to sleep. Hardy gave M.C.G. some beer to drink. The two started kissing, then got into Hardy's car. Once there, they had sexual intercourse, which M.C.G. described as placing his penis into her vagina. According to M.C.G., Hardy wore a condom, and they both took off their own clothes. Some months later, M.C.G. left her house after midnight on September 28, 2014, to meet Hardy on the playground of the Olsburg Grade School in Pottawatomie County, Kansas. The two had sexual intercourse again, this time outdoors on the ground. M.C.G. said Hardy penetrated her vagina, but he did not wear a condom that time.

On October 15, 2014, law enforcement arrested Hardy and took him to the Pottawatomie County Sheriff's Office for questioning. Hardy admitted to giving M.C.G. alcohol on the camping trip and having sex with her on both occasions. Hardy had known M.C.G. for a while, and knew she was only 14 years old when he had sex with her. He also told police the two had exchanged nude pictures of each other but he had erased them from his phone.

On October 21, 2014, the State charged Sean Hardy with two counts of aggravated indecent liberties with a child and one count of furnishing alcoholic liquor to a minor. On February 10, 2015, the State amended the charges to one count of indecent liberties with a child and one count of lewd and lascivious behavior. On Feburary 19, 2015, Hardy pled guilty to the amended charges.

Before sentencing, Hardy filed a motion challenging lifetime postrelease supervision as unconstitutional under § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution. He argued that he had no prior sex offenses, that he was under the influence of alcohol when the offenses were

2

committed, and that the acts, though unlawful, were consensual. He also argued that the possibility of lifetime imprisonment because of a new conviction while on lifetime postrelease supervision made the sentence disproportionate to other more serious offenses in Kansas. He further argued that lifetime postrelease supervision is disproportionate to sentences imposed for the same crime in other jurisdictions.

At sentencing, M.C.G.'s mother spoke, telling the trial court:

"I just want you and him to understand that our group of friends is like a family, and I have my friends here. Between us we have 13 kids we let him be around.

"And he waited until we all fell asleep and got my daughter drunk and had sex with her within 200 yards of all of us, including our other children. He then took her to a playground and did it again without a condom.

"She has now had to go through OB appointments and med checks and therapy as a result, and every memory we have that included him is disgusting to me."

At the hearing, Hardy asserted that he was an alcoholic and was intoxicated when the incident occurred, thus impairing his judgment. He also argued that lifetime postrelease supervision is unconstitutional as applied. He specifically mentioned that based on his age, if he returned to prison for a new conviction while on lifetime postrelease supervision, he might be required to serve significantly more prison time than someone convicted of murder.

After reviewing *State v. Mossman*, 294 Kan. 901, 906, 281 P.3d 153 (2012), and *State v. Reed*, 51 Kan. App. 2d 107, 341 P.3d 616 (2015), the trial court noted that our Supreme Court considered crimes against minors to be "particularly heinous," even if they were consensual. In drawing guidance from the *Mossman* holding, the trial court observed that the *Mossman* court indicated that such crimes "present a special problem

3

and danger to society, and their actions produce particularly devastating consequences, which include both physical and psychological harm to the minor." The trial court also stated that the *Mossman* court recognized that the Kansas Legislature treated these crimes as violent felonies, which was consistent with other jurisdictions. Furthermore, the *Mossman* court determined that lifetime post-release supervision served several valid penological goals. The trial court also referenced the *Reed* decision, where this court held that lifetime postrelease supervision was not unconstitutional for a defendant convicted of attempted indecent liberties with a child. The trial court determined that the analysis in *Mossman* applied in Hardy's case. Moreover, Hardy's case involved more than an attempt, as in *Reed*. The trial court ultimately concluded lifetime postrelease supervision was not unconstitutional in Hardy's case.

*Did Hardy's Sentence of Lifetime Postrelease Supervision Violate § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution?*

*Insufficient Record for Appellate Review of Case-Specific Challenge*

Case-specific challenges to the constitutionality of a sentence under § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment require the trial court to make both factual findings and legal conclusions. *State v. Mossman*, 294 Kan. 901, 906, 281 P.3d 153 (2012); *State v. Gomez*, 290 Kan. 858, 865-67, 235 P.3d 1203 (2010). Under Kansas Supreme Court Rule 165 (2015 Kan. Ct. R. Annot. 257), trial court judges have the primary responsibility for creating a record of these findings and conclusions for appellate review. *State v. Seward*, 289 Kan. 715, 720, 217 P.3d 443 (2009), *disapproved on other grounds State v. Jolly*, 301 Kan. 313, 342 P.3d 935 (2015). A litigant who wishes to appeal a trial court judge's ruling, however, also has a duty to ensure any findings and conclusions by a trial court judge are sufficient to enable appellate review, even if this means filing a motion to invoke the judge's duty under Rule 165. *Seward*, 289 Kan. at 721. Appellate courts have declined to review constitutional challenges to

4

sentencing statutes when the appellant has failed to take the steps necessary to ensure a sufficient record for review. See, *e.g.*, *State v. Reed*, 50 Kan. App. 2d 1133, 1139, 336 P.3d 912 (2014); *State v. Beck*, No. 109,657, 2014 WL 2871322 (Kan. App. 2014) (unpublished opinion).

In this case, the trial court made virtually no findings of fact in reaching its conclusion that lifetime postrelease supervision was constitutional in Hardy's case. The trial court briefly stated that sex crimes with minor victims are heinous, violent, and cause physical and psychological damage. The trial court, however, did not address any of the specific facts of the incident. The closest the trial court came to any case-specific findings was when it referenced M.C.G.'s mother's statements at the sentencing hearing, noting "even if [this crime] would be considered consensual, which based upon the victim's mother it does not appear to me that it would be . . ." The trial court did not address any of the possibly mitigating facts Hardy raised in his motion or at the hearing. The court did not specifically address the three *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978), factors as part of its § 9 constitutionality analysis. Moreover, the record does not indicate that Hardy made any attempt to create a more sufficient record for appellate review. Because the trial court's factual and legal findings are so scant and because Hardy did not take action to provide an adequate record for appellate review, we determine that our appellate review is precluded concerning Hardy's § 9 challenge.

We turn now to Hardy's challenge to his sentence of lifetime postrelease supervision under the Eighth Amendment to the United States Constitution. The Eighth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits imposing cruel and unusual punishment. The United States Supreme Court has held the Eighth Amendment does not require strict proportionality between a crime and a sentence, but it does forbid a sentence that is grossly disproportionate to a crime. *State v. Woodard*, 294 Kan. 717, 719-21, 280 P.3d 203 (2012) (citing *Ewing v. California*, 538 U.S. 11, 20-21, 123 S. Ct. 1179, 155 L. Ed.

5

2d 108 [2003]). There are two types of proportionality claims under the Eighth Amendment. The first type is case-specific and challenges the sentence as disproportionate "'given all the circumstances in a particular case.'" *United States v. Williams*, 636 F.3d 1229, 1233 (9th Cir. 2010) (quoting *Graham v. Florida*, 560 U.S. 48, 59, 130 S. Ct. 2011, 176 L. Ed. 2d 825 [2010]). The second type is categorical and must show that an entire class of sentences is unconstitutionally disproportionate given the severity of the sentence, the gravity of the crime, and the type of offender. See 636 F.3d at 1233.

### *Case-specific Challenge*

In analyzing a case-specific Eighth Amendment challenge, courts will first compare the gravity of the offense with the severity of the sentence. *State v. Ross*, 295 Kan. 424, 428-29, 284 P.3d 309 (2012). In determining whether a proportionality challenge passes this threshold determination of gross disproportionality, courts may consider the defendant's mental state and motive in committing the crime, the actual harm caused to the victim or to society by the defendant's conduct, the defendant's prior criminal history, and the defendant's propensity for violence. 295 Kan. at 429.

Hardy relies on his argument regarding the *Freeman* factors as his case-specific challenge under the Eighth Amendment. See *Ross*, 294 Kan. at 429 (noting analysis under *Freeman* factors applies to threshold determination of Eighth Amendment analysis). As noted earlier, however, the trial court made almost no factual findings, other than perhaps that Hardy's crime was "heinous," "violent," and caused physical and psychological harm to victims. Based on these limited factual findings, Hardy does not pass the threshold determination of gross disproportionality, and his case-specific challenge fails.

*Categorical Challenge*

Hardy did not raise a categorical challenge under the Eighth Amendment before the trial court. Our Supreme Court has held, however, that categorical proportionality challenges under the Eighth Amendment can be raised for the first time on appeal. *State v. Ruggles*, 297 Kan. 675, 679, 304 P.3d 338 (2013).

Hardy begins his categorical challenge by arguing "[t]he Eighth Amendment and Sec. 9 of the Kansas Bill of Rights categorically prohibits imposition of lifetime postrelease for *indecent solicitation of a child*." (Emphasis added.) He proceeds to make an argument based on inclusion in a class defined by "a sex offense, not involving pornography, where the offender and the victim *do not engage in physical contact, much less a physical sexual act*." (Emphasis added.) Hardy did not plead to indecent solicitation of a child, though—his conviction was for indecent liberties with a child. The elements of his crime of conviction were as follows:

> "engaging in any of the following acts with a child who is 14 or more years of age but less than 16 years of age: . . . [a]ny lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both." K.S.A. 2015 Supp. 21-5506(a)(1).

The arguments Hardy makes are inapplicable to his actual crime of conviction because indecent liberties with a child involves physical sexual contact.

Hardy does, at one point, note "the facts of his crime . . . involve[] only the lewd fondling or touching of a child between the ages of 14 and 16." His argument based on this statement, however, is limited to one paragraph. Because Hardy did not provide an argument based on a class of offenders to which he actually belongs, this issue is not adequately briefed, and we deem it waived and abandoned. See *Boleyn*, 297 Kan. at 633.

7

*State v. Proctor*

Finally, Hardy argues that under the holding in *State v. Proctor*, 47 Kan. App. 2d 889, 280 P.3d 839 (2012) (*Proctor I*), lifetime postrelease supervision in Hardy's case should be found unconstitutional under both the Kansas Constitution and the United States Constitution. In *Proctor I*, Proctor, a 19-year-old victim of sexual abuse, pled guilty to aggravated indecent solicitation of a child, and the trial court sentenced him to probation. The *Proctor I* court found lifetime postrelease supervision was unconstitutional as applied to the defendant under the Kansas Constitution and the United State Constitution. *State v. Proctor*, No. 104,697, 2013 WL 6726286, at *1 (Kan. App. 2013) (unpublished opinion) (*Proctor II*). Our Supreme Court summarily reversed *Proctor I* and remanded it for reconsideration in light of the Supreme Court's recent decisions in *Mossman* and *Cameron*. 2013 WL 6726286, at *1. This court issued a new opinion reaching the same result, incorporating its reasoning from *Proctor I*. 2013 WL 6726286, at *1. In *Proctor I* and *II*, this court reasoned "the punishment exacted [*i.e.*, lifetime imprisonment] if Proctor were placed on lifetime postrelease supervision and then revoked for a nonperson felony conviction would be grossly disproportionate to the triggering offense and to the whole of his criminal history." *Proctor I*, 47 Kan. App. 2d at 930; *Proctor II*, 2013 WL 6726286, at *4-7.

Hardy argues that much like Proctor, he faces life in prison not for his current crime of conviction, but some future crime he may commit, even if that future offense is not sexually violent. Neither *Proctor I* nor *II* are dispositive in Hardy's case, though. As the State points out, the ruling in *Proctor II* was limited to "the facts of [that] case at the time of Proctor's sentencing and decides only the constitutionality of lifetime postrelease supervision as to Proctor alone." *Proctor II*, 2013 WL 6726286, at *1. Additionally, at the time the court decided *Proctor I* and *II*, lifetime imprisonment upon the conviction of a new felony was mandatory. K.S.A. 2009 Supp. 75-5217(c). Now, if someone commits a new felony while on lifetime postrelease supervision, the prisoner review board has

8

discretion to decide how much time the offender will serve in prison. K.S.A. 2015 Supp. 75-5217. Last, our Supreme Court has already rejected attempts to rely on this argument from *Proctor I* and *II*, noting "we have already disavowed considering what might happen if a defendant happens to commit a subsequent felony." *Funk*, 301 Kan. at 938. Because all of Hardy's constitutional challenges fail, and neither *Proctor I* nor *Proctor II* provide a basis for relief, we determine that Hardy's sentence was not cruel or unusual.

Affirmed.