NOT DESIGNATED FOR PUBLICATION

No. 113,309

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROYALE C. SEBASTIAN-WALKER,
*Appellant*.


MEMORANDUM OPINION


Appeal from Sedgwick District Court; WARREN M. WILBERT, judge. Opinion filed September 23, 2016. Reversed and remanded with directions.

*Ryan Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before STANDRIDGE, P.J., HILL, J., and BURGESS, S.J.


*Per Curiam*: Royale C. Sebastian-Walker appeals the lifetime postrelease supervision portion of his sentence. Sebastian-Walker pled guilty to rape and aggravated burglary, which he committed when he was 16 years old. The district court sentenced Sebastian-Walker to 178 months in prison and, as required by statute for the rape conviction, mandatory lifetime postrelease supervision. Sebastian-Walker argues that the latter part of his sentence is unconstitutional under *State v. Dull*, 302 Kan. 32, 61, 351 P.3d 641 (2015), *cert. denied* 136 S. Ct. 1364 (2016), which held that mandatory lifetime postrelease supervision is categorically unconstitutional when imposed on a juvenile who

1

was convicted of aggravated indecent liberties with a child. Because the reasoning in *Dull* encompasses juveniles convicted of rape, we reverse the lifetime postrelease supervision portion of Sebastian-Walker's sentence.

FACTUAL AND PROCEDURAL BACKGROUND

On September 12, 2014, Sebastian-Walker pled guilty to one count of rape and one count of aggravated burglary. The crimes were committed when Sebastian-Walker was 16 years old. The district court sentenced Sebastian-Walker to 178 months in prison. Because he was convicted of rape, the court also sentenced Sebastian-Walker to mandatory lifetime postrelease supervision under K.S.A. 2015 Supp. 22-3717(d)(1)(G) ("[P]ersons convicted of a sexually violent crime committed on or after July 1, 2006, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life."); see also K.S.A. 2015 Supp. 22-4902(c) ("Sexually violent crime" includes rape, as defined in K.S.A. 2015 Supp. 21-5503).

Sebastian-Walker did not raise a cruel-and-unusual-punishment argument in his pleadings to the district court or during oral argument at his sentencing hearing. Sebastian-Walker argues for the first time on appeal that the district court's order of lifetime postrelease supervision is categorically unconstitutional under the Eighth Amendment to the United States Constitution, relying on the recent holding in *Dull*.

*Preservation of Issue*

Neither party raises the issue of whether the constitutionality of Sebastian-Walker's sentence is preserved for appeal. However, this court must note that, generally, constitutional issues may not be raised for the first time on appeal. See *State v. Ortega-*

2

*Cadelan*, 287 Kan. 157, 159, 194 P.3d 1195 (2008). There are three exceptions to the general rule:

> "'(1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the district court is right for the wrong reason.'" *State v. Gomez*, 290 Kan. 858, 862, 235 P.3d 1203 (2010).

The *Dull* court held that a categorical proportionality challenge may be raised for the first time on appeal. 302 Kan. at 38-39. Because the factors assessed in a categorical proportionality test are not case specific and generally only raise questions of law, Dull could maintain his claim on that ground even though it was not raised to the district court. 302 Kan. at 39. As Sebastian-Walker argues that his sentence is categorically unconstitutional under *Dull*, we will hear Sebastian-Walker's claim for the first time on appeal.

*Standard of Review*

"A categorical proportionality challenge under the Eighth Amendment to the United States Constitution implicates questions of law, and this court has unlimited review. A [juvenile's] constitutional challenge to the lifetime postrelease supervision portion of [a rape] sentence is an indirect attack on the constitutionality of the statute as applied." *Dull*, 302 Kan. 32, Syl. ¶ 3.

Sebastian-Walker claims that the lifetime postrelease supervision portion of his sentence is unconstitutional under *Dull*, which held that such punishment is categorically unconstitutional under the Eighth Amendment when imposed on a juvenile convicted of aggravated indecent liberties with a child. 302 Kan. at 61. On its limited holding, *Dull* does not apply to juvenile defendants who were convicted of rape, which is a crime with

3

a higher severity level than aggravated indecent liberties with a child. Compare K.S.A. 2015 Supp. 21-5503 with K.S.A. 2015 Supp. 21-5506. However, the *Dull* court based its decision on an extensive examination of the sentencing of juvenile offenders in cases involving the death penalty, lifetime without parole, and mandatory lifetime supervision. The court specifically found that the reasoning behind mandatory lifetime postrelease supervision for sex offenders not as applicable to juveniles as compared to adults. 302 Kan. at 60-61. We find that the categorical reasoning articulated in *Dull* applies to the crime of rape committed by a juvenile.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." "[A]n Eighth Amendment challenge to a term-of-years sentence as disproportionate and therefore cruel and unusual encompasses cases in which the court implements the proportionality standard based on certain categorical restrictions." *Dull*, 302 Kan. at 44. In considering a categorical challenge under the Eighth Amendment, an appellate court uses a two-step process. First, the court considers objective indicia of society's standards to determine whether there is a national consensus against the sentencing practice at issue. Second, the court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution. 302 Kan. at 39 (citing *Graham v. Florida*, 560 U.S. 48, 61, 130 S. Ct. 2011, 176 L. Ed. 2d 825 [2010]).

Under the first step, the *Dull* court determined that Dull failed to demonstrate a national consensus against sentencing juveniles to mandatory lifetime postrelease supervision or against mandatory minimum sentences; however, the court also noted that the "application of adult mandatory sentencing statutes to juveniles skews the analysis— along with the changing landscape of juvenile sentencing." 302 Kan. at 50. The court then proceeded with the second part of the analysis.

Next, in exercising its independent judgment, the *Dull* court considered three relevant factors: the diminished culpability of juveniles, the severity of lifetime postrelease supervision, and the legitimate penological goals of the punishment. For purposes of sentencing, the court noted that children are constitutionally different and "'have diminished culpability and greater prospects for reform.'" *Dull*, 302 Kan. at 51 (quoting *Miller v. Alabama*, 567 U.S. __, 132 S. Ct. 2455, 2464, 183 L. Ed. 2d 407 [2012]). Juveniles lack maturity and have an underdeveloped sense of responsibility, are more vulnerable to negative influences, and lack fully formed character traits. The Kansas Supreme Court concluded that "''juvenile offenders cannot with reliability be classified among the worst offenders.'''" 302 Kan. at 52 (quoting *State v. Ruggles*, 297 Kan. 675, 682, 304 P.3d 338 [2013]).

The *Dull* court acknowledged that "mandatory lifetime postrelease supervision is a severe sanction in Kansas." 302 Kan. at 53. The court laid out verbatim the entirety of the conditions of postrelease supervision as listed on the Kansas Department of Corrections website to illustrate how they "restrain one's freedom with significant restrictions and limitations." 302 Kan. at 55. In summary, once a defendant is released from prison, he or she must: register with and report to the local sheriff as directed; report to his or her parole officer as directed; undergo a polygraph examination anytime the parole officer directs; pay supervision costs and other costs as directed by the parole officer; not travel outside the state without permission; refrain from alcohol without permission; and refrain from owning or possessing any firearms. See 302 Kan. at 56. Moreover, the court noted that revocation of lifetime postrelease supervision could result in further incarceration up to a lifetime sentence without the possibility of parole. 302 Kan. at 56.

Finally, *Dull* considered the penological goals of lifetime postrelease supervision, including retribution, deterrence, and incapacitation, in the context of a juvenile offender who committed a sex offense. The *Dull* court held that juveniles should be treated differently, finding:

"'[R]etribution, which relates to a defendant's blameworthiness, is less compelling in light of a juvenile's lesser culpability,' [citation omitted], and no showing was made that mandatory lifetime postrelease supervision 'is not grossly disproportionate in light of the justification offered.' [Citation omitted.] Second, the deterrent effect of mandatory lifetime postrelease supervision only works if the offender refrains from negative actions based on potential consequences; however, juveniles lack the ability to take the requisite step back, analyze their actions, recognize the consequences, and choose a difference course of action. [Citation omitted.]

"Finally, while we have held the goals of rehabilitation and incapacitation are served by the imposition of mandatory lifetime postrelease supervision on adult offenders given their propensity to strike again, juveniles have a lower risk of recidivism." 302 Kan. at 60.

The *Dull* court concluded that despite the lack of a national consensus, mandatory lifetime postrelease supervision for juveniles is inappropriate, finding:

"Juveniles, especially those who commit a nonhomicide offense, are clearly viewed with a diminished moral culpability compared to adults. [Citation omitted.] Mandatory lifetime postrelease supervision for a juvenile is a severe lifetime sentence, even when the potential for further imprisonment is not considered, because the juvenile's liberty interests are severely restricted for life by the terms of the mandatory lifetime postrelease supervision. While we have found mandatory lifetime postrelease supervision constitutional for adults, the same factors that result in a diminished culpability for juveniles, *i.e.*, recklessness, immaturity, irresponsibility, impetuousness, and ill-considered decision making, along with their lower risks of recidivism, all diminish the penological goals of lifetime supervision for *juvenile sex offenders*." (Emphasis added.) 302 Kan. at 60-61.

The reasoning in *Dull* applies in this case. All the findings in *Dull* and the cases cited therein concerning the mental status and environmental vulnerabilities of juveniles are not crime specific. Such analysis has been been applied in cases involving juveniles charged with homicide. See *Miller*, 132 S. Ct. 2455. In *Dull,* the defendant was charged

6

with rape and pled guilty to aggravated indecent liberties with a child as part of a multi case plea agreement. In the present case the charge was rape. Both rape and aggravated indecent liberties are considered sexually violent crimes. There is simply no way to distinguish the reasoning and the ruling in the *Dull* case from the facts and circumstances in this case. The ordering of mandatory lifetime postrelease supervision in this case is unconstitutional.

Reversed and remanded.