No. 106,166

STATE OF KANSAS, *Appellee*, v. STEVEN WILLIAMS, *Appellant*.
(319 P.3d 528)

Opinion filed March 7, 2014.

*Rachel L. Pickering*, of Kansas Appellate Defender Office, argued the cause, and *Matthew J. Edge* and *Deborah Hughes*, of the same office, were on the briefs for appellant.

*Patrick J. Hurley*, assistant district attorney, argued the cause, and *Jessica Dotter*, legal intern, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Steven A. Williams pleaded guilty to rape of a child and sexual exploitation of a child. He directly appeals the lifetime postrelease supervision portion of his sexual exploitation sentence. He argues lifetime postrelease supervision is a cruel and/or unusual punishment under § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution when applied to first-time offenders over age 18 convicted of crimes involving possession of pornographic images of children un-

der age 18. We hold the sentence is not disproportionate and affirm the sexual exploitation sentence.

But we vacate *sua sponte* the lifetime postrelease supervision portion of Williams' rape sentence. See *State v. Cash*, 293 Kan. 326, Syl. ¶ 2, 263 P.3d 786 (2011) (sentencing court has no authority to order lifetime postrelease supervision in conjunction with an off-grid indeterminate life sentence); K.S.A. 22-3504(1) (court may correct an illegal sentence at any time).

## FACTUAL AND PROCEDURAL BACKGROUND

Williams entered into a plea agreement under which he pleaded guilty to one count of rape of a child and one count of sexual exploitation of a child for offenses occurring in June 2010. At the plea hearing, Williams confirmed the State's factual basis for the sexual exploitation of a child charge by admitting that he possessed, with intent to arouse his sexual desires, an electronic recording depicting a child under the age of 18 engaging in sexually explicit conduct. Williams was 28 years old when the crimes occurred and a first-time offender.

At sentencing, Williams requested a downward departure, citing his lack of criminal history, age, acceptance of responsibility, remorse, substantial psychological impairment of the ability to appreciate the criminality of his conduct or conform his conduct to the requirements of the law, and low to moderate level of predicted recidivism. The district court denied the departure motion. Williams did not argue that lifetime postrelease supervision for sexual exploitation of a child would be a cruel and/or unusual punishment.

For rape of a child, the court sentenced Williams to life imprisonment with a mandatory minimum term of 25 years under Jessica's Law, K.S.A. 21-4643, and to lifetime postrelease supervision. For sexual exploitation of a child, the court sentenced Williams to a concurrent term of 34 months' imprisonment and mandatory lifetime postrelease supervision under K.S.A. 2009 Supp. 22-3717(d)(1)(G).

Williams filed a timely notice of appeal with this court. He argues the lifetime postrelease supervision sentence imposed for sexual exploitation of a child is a cruel and/or unusual punishment under

§ 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution. He did not appeal any aspect of his rape sentence.

The State raises three threshold issues: (1) whether this court lacks jurisdiction under K.S.A. 21-4721(c)(1) because Williams' challenge is an appeal from a presumptive sentence; (2) whether the challenge is moot because he is subject to mandatory lifetime postrelease supervision for his rape conviction; and (3) whether the challenge was waived when it was not raised to the district court. In the alternative, the State argues mandatory lifetime postrelease supervision is constitutionally appropriate. Inexplicably, Williams did not afford this court any response to these questions. We address the State's threshold issues first.

## JURISDICTION

The State claims this court lacks jurisdiction because Williams received a presumptive sentence. This argument is without merit. K.S.A. 21-4721(c)(1) states:

"(c) On appeal from a judgment or conviction entered for a felony committed on or after July 1, 1993, the appellate court shall not review:
(1) Any sentence that is within the presumptive sentence for the crime."

K.S.A. 21-4703(q) defines a presumptive sentence as "the sentence provided in a grid block for an offender classified in that grid block by the combined effect of the crime severity ranking of the current crime of conviction and the offender's criminal history."

This court has previously addressed whether lifetime postrelease supervision is a cruel or unusual punishment without examining jurisdiction under K.S.A. 21-4721(c)(1), but in those appeals the issue was not raised. See, *e.g.*, *State v. Mossman*, 294 Kan. 901, 921, 281 P.3d 153 (2012) (challenge to mandatory lifetime postrelease supervision for aggravated indecent liberties with a child); *State v. Cameron*, 294 Kan. 884, 895, 281 P.3d 143 (2012) (challenge to mandatory lifetime postrelease supervision for aggravated indecent solicitation of a child). The State's jurisdictional argument hinges on two related issues of first impression: (1) whether imposition of the 34-month presumptive imprisonment sentence prevents review of the lifetime postrelease supervision ordered as part

of Williams' sentence; and (2) if not, whether lifetime postrelease supervision is "within the presumptive sentence," precluding jurisdiction under K.S.A. 21-4721(c)(1).

*Standard of Review*

To resolve the State's jurisdictional arguments, we must interpret and apply K.S.A. 21-4721(c)(1) (jurisdiction) and K.S.A. 21-4703(q) (defining presumptive sentence). Statutory interpretation and jurisdictional challenges involve questions of law subject to unlimited appellate review. *State v. Alonzo*, 296 Kan. 1052, 1054, 297 P.3d 300 (2013).

Statutory interpretation begins with "the fundamental rule that we give effect to the legislature's intent as it is expressed in the statute. Courts must apply a statute's language when it is clear and unambiguous, rather than determining what the law should be, speculating about legislative intent, or consulting legislative history." *State v. Martinez*, 290 Kan. 992, 998, 236 P.3d 481 (2010). Stated differently, "[w]hen the language is plain and unambiguous, an appellate court is bound to implement the expressed intent." *State v. Manbeck*, 277 Kan. 224, Syl. ¶ 3, 83 P.3d 190 (2004).

*The presumptive prison sentence does not preclude review*

The State's first claim is that imposition of a presumptive prison sentence prevents review of all other aspects of a defendant's sentence. To show the fallacy in this argument it is helpful to review some general principles regarding criminal sentences.

In presumptive imprisonment cases for nondrug crimes, the sentencing court is required to pronounce the complete sentence at the sentencing hearing, which "shall include the prison sentence, maximum potential reduction to such sentence as a result of good time and the period of postrelease supervision." K.S.A. 2009 Supp. 21-4704(e)(2). We have held this statutory requirement "clearly mandates and defines two segments of the bifurcated sentence: the period of confinement and the period of postrelease supervision." *State v. Gaudina*, 284 Kan. 354, 358, 160 P.3d 854 (2007). This means Williams' complete sentence for sexual exploitation of

a child has two components—the 34-month confinement and the lifetime postrelease supervision.

As to the first component, it is clear Williams' 34-month prison confinement is a presumptive sentence because it is the aggravated presumptive sentence in the applicable grid block. See K.S.A. 2009 Supp. 21-4704(a) (sentencing grid category I, severity level V). But the question is whether this court lacks jurisdiction to review the lifetime postrelease supervision simply because the other portion of Williams' sentence is presumptive. The State relies on two decisions from this court as its support: *State v. Huerta*, 291 Kan. 831, 831, 247 P.3d 1043 (2011) (challenging his consecutive presumptive sentences totaling 372 months' imprisonment); *State v. McCaslin*, 291 Kan. 697, 730, 245 P.3d 1030 (2011) (challenging imposition of the aggravated terms in the presumptive grid boxes).

Neither decision, however, supports the State's argument because the defendants in both cases challenged the term of their confinement—not the period of postrelease supervision. What the State is really trying to do is extend *Huerta* and *McCaslin*, not apply them. But the State does not explain how imposition of a presumptive period of confinement precludes appellate review of the period of postrelease supervision, which is the issue at hand, and we do not accept the State's position.

Postrelease supervision is a distinct portion of the sentence. See *Gaudina*, 284 Kan. at 358. We hold a presumptive prison sentence does not render an appellate court without jurisdiction, under K.S.A. 21-4721(c)(1), to review the imposition of a lifetime postrelease supervision period.

*Lifetime postrelease supervision is not a presumptive sentence under K.S.A. 2009 Supp. 22-3717(d)(1)(G)*

The State does not directly argue that lifetime postrelease supervision is a presumptive sentence under the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.*, but we consider that question to complete our jurisdiction analysis. This court has a duty to consider jurisdictional issues *sua sponte. State v. Berreth*, 294 Kan. 98, 117, 273 P.3d 752 (2012).

Williams was sentenced to lifetime postrelease supervision for sexual exploitation of a child under K.S.A. 2009 Supp. 22-3717(d)(1)(G). That statute governs parole and postrelease supervision. It is not part of the KSGA.

Under K.S.A. 2009 Supp. 22-3717(d)(1)(G), persons "convicted of a sexually violent crime committed on or after July 1, 2006, and who are released from prison, shall be released to a mandatory period of postrelease supervision for the duration of the person's natural life." Sexual exploitation of a child is a sexually violent crime. K.S.A. 2009 Supp. 22-3717(d)(2)(H). To impose lifetime postrelease supervision, it is unnecessary for the sentencing court to go to the KSGA's applicable grid block. Rather, the statute mandates lifetime postrelease supervision for a range of crimes of varying severity levels under the legislatively defined category of "sexually violent crime." K.S.A. 2009 Sup. 22-3717(d)(1)(G); but see K.S.A. 2009 Supp. 22-3717(d)(1)(A) (basing the postrelease supervision term on the crime severity level). This sentencing scheme is analogous to imposing a mandatory life sentence under Jessica's Law, K.S.A. 21-4643.

In *State v. Ross*, 295 Kan. 1126, 1136-38, 289 P.3d 76 (2012), this court addressed whether an off-grid life sentence under Jessica's Law is a presumptive sentence. We held "a life sentence for an off-grid crime is not a 'presumptive sentence' as contemplated in K.S.A. 21-4703(q) because imposition of the life sentence was not arrived at by applying the applicable grid block of the sentencing guidelines." 295 Kan. at 1137-38.

The same analysis applies to Williams' lifetime postrelease supervision, which was determined pursuant to K.S.A. 2009 Supp. 22-3717(d)(1)(G), without applying the KSGA grid. Consistent with *Ross*, the mandatory lifetime postrelease supervision for a sexual exploitation of a child conviction is not within the presumptive sentence for the crime. We hold appellate review is not barred by K.S.A. 21-4721(c)(1) as to this aspect of Williams' sentence.

## MOOTNESS

The State originally argued Williams' appeal was moot because he would still be subject to lifetime postrelease supervision for the

rape conviction even if we granted him relief from the sexual exploitation conviction's lifetime postrelease supervision term. The underpinnings for this argument dissipated after this court issued a show cause order inquiring whether the sentence of lifetime postrelease supervision for the rape conviction should be vacated under our caselaw holding "a sentencing court has no authority to order a term of lifetime postrelease supervision in conjunction with an off-grid indeterminate life sentence." See *Cash*, 293 Kan. 326, Syl. ¶ 2; accord *State v. Seward*, 296 Kan. 979, 991-92, 297 P.3d 272 (2013) (*sua sponte* vacating sentence for lifetime postrelease supervision). Both parties have now admitted the lifetime postrelease supervision sentence for rape must be vacated under *Cash*, so the State offers a new mootness theory.

The State contends now that this appeal is moot because Williams also is subject to lifetime parole for the rape conviction under K.S.A. 2009 Supp. 22-3717(u). In making this revised challenge, the State concedes there are distinctions between parole and lifetime postrelease supervision, but it claims the "practical impact on appellant is the same." We reject this argument.

Generally, Kansas appellate courts do not decide moot questions or render advisory opinions. *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012). This is a court policy recognizing the judiciary's role to "determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive." *Board of Johnson County Comm'rs v. Duffy*, 259 Kan. 500, 504, 912 P.2d 716 (1996). The mootness test has been described as a determination whether " 'it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights. [Citation omitted.]' " *Montgomery*, 295 Kan. at 840-41.

To hold that Williams' appeal is moot, this court would need to conclude that vacating his sentence for lifetime postrelease supervision for sexual exploitation of a child would not impact his rights. But we cannot reach that conclusion.

Lifetime postrelease supervision subjects Williams to life in prison if he is later convicted of a new felony under K.S.A. 2009 Supp. 75-5217(c). That statute provides that, after a conviction for a new felony, "upon revocation, the inmate shall serve the entire remaining balance of the period of postrelease supervision even if the new conviction did not result in the imposition of a new term of imprisonment." In contrast, if Williams is convicted of a new felony while on lifetime parole, he can become parole eligible under K.A.R. 44-9-503(a)(1) (2013 Supp.), which states: "Any offender whose parole has been revoked may be required by the board to serve all *or any part of the remaining time on the sentence up to the original conditional release date*, plus all good time forfeited by the board." (Emphasis added.)

Vacating Williams' sentence for postrelease supervision would not be ineffectual and could impact his rights. There are pertinent distinctions between lifetime postrelease supervision and lifetime parole. We hold Williams' appeal is not moot.

## PRESERVATION

The State also challenges whether Williams' constitutional claims under § 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution are properly preserved. We agree the § 9 claim was not preserved.

This court employs a three-part test from *State v. Freeman*, 223 Kan. 362, Syl. ¶ 2, 574 P.2d 950 (1978), to determine whether a sentence for lifetime postrelease supervision is a cruel or unusual punishment under § 9 of the Kansas Constitution Bill of Rights. See *Mossman*, 294 Kan. at 908. In Williams' appellate briefing, the § 9 claim is addressed only by a two-sentence paragraph in which the state constitutional language is restated and one Kansas case interpreting that language is quoted. This is woefully insufficient. Williams provides no argument demonstrating the *Freeman* test is met, and mentions *Freeman* only in the context of the standard of review.

When a litigant fails to adequately brief an issue it is deemed abandoned. *State v. Rojas-Marceleno*, 295 Kan. 525, 543, 285 P.3d 361 (2012) (issue abandoned for failure to adequately brief it);

*McCain Foods USA Inc. v. Central Processors, Inc.*, 275 Kan. 1, 15, 61 P.3d 68 (2002) (Simply pressing a point without pertinent authority, or without showing why it is sound despite a lack of supporting authority, is akin to failing to brief an issue; when appellant fails to brief an issue, that issue is waived or abandoned.); see also Rule 6.02(a)(5) (2013 Kan. Ct. R. Annot. 39) (appellant's brief must include "the arguments and authorities relied on"). We decline to review the merits of Williams' § 9 claim because it was abandoned.

We further note the State is correct that a Kansas Constitution Bill of Rights § 9 claim cannot be raised for the first time on appeal. The *Freeman* test includes both legal and factual inquiries, which means appellate courts are unable to consider such arguments without the benefit of district court factfinding and analysis. See, *e.g.*, *State v. Gomez*, 290 Kan. 858, 867-68, 235 P.3d 1203 (2010).

We reach a different conclusion regarding preservation of the Eighth Amendment challenge. Constitutional issues generally cannot be raised for the first time on appeal. But there are exceptions to this rule, including when the claim involves only questions of law, arises on proven or admitted facts, and is determinative of the case. See *Gomez*, 290 Kan. at 862. We have previously held that a categorical proportionality challenge may be raised for the first time on appeal under this exception. *State v. Ruggles*, 297 Kan. 675, Syl. ¶ 1, 304 P.3d 338 (2013); *State v. Cervantes-Puentes*, 297 Kan. 560, 565-66, 303 P.3d 258 (2012).

In *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), the Court divided its prior proportionality decisions into two general classifications: (1) challenges to the length of term-of-years sentences given all the circumstances in a particular case, *i.e.*, case-specific claims; and (2) cases in which the Court implements the proportionality standard by certain categorical restrictions, *i.e.*, categorical claims. 560 U.S. at 59; see also *Gomez*, 290 Kan. at 863-64 (summarizing *Graham*). Claims within the first category—case-specific claims—are inherently factual. We have held these claims cannot be raised for the first time on appeal. *Gomez*, 290 Kan. at 864. Categorical claims, however, only implicate ques-

tions of law and may be raised for the first time on appeal. *Ruggles*, 297 Kan. at 679. Williams raises a categorical claim.

Finally, the State argues Williams abandoned his constitutional challenges by failing to argue whether there are any applicable exceptions to the general rule that constitutional issues not raised before the district court may not be raised on appeal. See *Gomez*, 290 Kan. at 862. The State contends that if any exceptions were applicable, it was Williams' burden to argue them. We note the rules of this court require a party briefing an issue on appeal to make "a reference to the specific location in the record on appeal where the issue was raised and ruled upon. *If not raised below, explain why the issue is properly before the court.*" (Emphasis added.) Rule 6.02(a)(5) (2013 Kan. Ct. R. Annot. 39-40).

The State's logic is straightforward. It reasons that even if there were an exception that might permit Williams to raise his constitutional challenge for the first time on appeal, Williams was obligated to affirmatively argue the application of that exception or have the argument deemed waived or abandoned. This is a valid point, and we remain puzzled why Williams did not submit a reply brief to respond to the State's preservation arguments.

We agree Williams did not comply with Rule 6.02(a)(5) because his brief does not "explain why" his argument can be raised for the first time on appeal. We have previously declined to address an issue on this ground. See *e.g.*, *State v. Johnson*, 293 Kan. 959, 964-65, 270 P.3d 1135 (2012) (declining to review detention argument in part because defendant did not argue any exceptions to the preservation rule applied); *State v. Tupas*, No. 100,100, 2009 WL 1140323, at *1 (Kan. App. 2009) (unpublished opinion). Nonetheless, we will reach the merits of the Eighth Amendment issue in this case because it appears up to now the rule has not been strictly enforced and our caselaw clearly establishes that a categorical proportionality challenge may be raised for the first time on appeal.

But we are unwilling to ignore the rule's plain language. Future litigants should consider this a warning and comply with Rule 6.02(a)(5) by explaining why an issue is properly before the court if it was not raised below—or risk a ruling that an issue improperly briefed will be deemed waived or abandoned. See, *e.g.*, *State v.*

*Tague*, 296 Kan. 993, 1001-02, 298 P.3d 273 (2013) (argument abandoned because it is not supported with pertinent authority as required by Rule 6.02[a][5]); *Johnson*, 293 Kan. at 964-65 (must argue why exception to preservation requirement applies); *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 623, 244 P.3d 642 (2010) (each issue must begin with citation to appropriate standard of review and reference to specific location in record where issue was raised and ruled upon).

### EIGHTH AMENDMENT CATEGORICAL PROPORTIONALITY CLAIM

Williams confines his Eighth Amendment claim to a categorical proportionality challenge. He argues mandatory lifetime post-release supervision is unconstitutionally disproportionate as applied to first-time offenders over age 18 convicted of crimes involving possession of pornographic images of a person under age 18. His argument raises questions of law over which this court has unlimited review. *Mossman*, 294 Kan. at 925.

The United States Supreme Court identifies three subcategories of categorical proportionality challenges. The first considers the nature of the offense, such as a prohibition on capital punishment for nonhomicide crimes against individuals. *Graham*, 560 U.S. at 60-61 (citing *Enmund v. Florida*, 458 U.S. 782, 102 S. Ct. 3368, 73 L. Ed. 2d 1140 [1982]). The second considers the characteristics of the offender, such as a categorical rule prohibiting the death penalty for juveniles. *Graham*, 560 U.S. at 61 (citing *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 [2005].) The third, which was first recognized in *Graham*, combines the two because it "implicates a particular type of sentence as it applies to an entire class of offenders who have committed a range of crimes." 560 U.S. at 61. Williams' claim fits within this third category. He argues lifetime postrelease supervision is unconstitutional for a class of offenders (first time offenders over age 18) in light of the nature of the offense (crimes involving possession of pornographic images of a person under age 18).

This court recently held that employing "first-time offenders" as a "nature of the offense" offender category is consistent with the manner in which the United States Supreme Court has considered

classes of offenders in its decisions. *Mossman*, 294 Kan. at 928-29. Williams' category of offenses, which he summarizes as "crimes involving possession of pornographic images under age 18," does not narrow the crime of his conviction, which is sexual exploitation of a child. It reflects Williams' crime of conviction as defined by the legislature. See K.S.A. 21-3516(a)(2) (defining sexual exploitation of a child as "possessing any visual depiction . . . where such visual depiction of a child under 18 years of age is shown or heard engaging in sexually explicit conduct with intent to arouse or satisfy the sexual desires or appeal to the prurient interest of the offender, the child or another."). We hold Williams raises a valid categorical proportionality claim.

There is a two-prong test when a defendant raises a categorical proportionality challenge to a term-of-years sentence:

" 'The Court first considers "objective indicia of society's standards, as expressed in legislative enactments and state practice" to determine whether there is a national consensus against the sentencing practice at issue. [Citation omitted.] Next, guided by "the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose," [citation omitted], the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution.' " *Ruggles*, 297 Kan. at 680 (quoting *Graham*, 560 U.S. at 61).

When applying these factors, community consensus is entitled to great weight but it is not determinative. As we noted in *Mossman*:

" 'In accordance with the constitutional design, "the task of interpreting the Eighth Amendment remains [the Court's] responsibility." [Citation omitted.] The judicial exercise of independent judgment requires consideration of the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question. [Citations omitted.] In this inquiry the Court also considers whether the challenged sentencing practice serves legitimate penological goals. [Citations omitted.]' " *Mossman*, 294 Kan. at 929 (quoting *Graham*, 560 U.S. at 67-68).

This court jumped to the second prong in *Ruggles* after holding that to be successful a defendant "must satisfy the second prong of the categorical proportionality analysis, *i.e.*, he or she must show that, based on the characteristics of the class of offender he or she

belongs to and the nature of the offense at issue, the sentencing practice is disproportionate with the offender's culpability." 297 Kan. 675, Syl. ¶ 4; see also *Graham*, 560 U.S. at 67 (" 'Community consensus, while "entitled to great weight," is not itself determinative of whether a punishment is cruel and unusual.' ").

But we must also consider whether moving to the second prong is always an appropriate shortcut. The two prongs that must be considered are not analogous to separate elements of a crime that are easily severable. Arguably, the objective criteria should be part of what this court considers when forming its subjective opinion. Williams attempts to demonstrate there is a national consensus against mandatory lifetime postrelease supervision both by argument in his brief and reference to statutes in other states. We noted in *State v. Mossman*, 294 Kan. 901, 930, 281 P.3d 153 (2012), that "several other states have adopted lifetime postrelease supervision for many, if not all, sexually violent crimes."

Williams does not specifically address why the category of offender to which he belongs—first time offenders over age 18—is distinguishable. But regarding the nature of the offense, he argues sexual exploitation of a child involves no force compared to the other "sexually violent crimes," rendering him less culpable. Our Court of Appeals has rejected this argument and held lifetime postrelease supervision for sexual exploitation of a child is not a categorically disproportionate sentence in two cases: *State v. Clay*, No. 104,797, 2013 WL 1444184, at *6-8 (Kan. App. 2013) (unpublished opinion), *rev. denied* 299 Kan. 1271 (2014); *State v. Schiaffino*, No. 106,253, 2013 WL 1444291, at *5-7 (Kan. App. 2013) (unpublished opinion), *rev. denied* 299 Kan. 1273 (2014).

This court has previously relied upon the Ninth Circuit Court of Appeals' analysis in *United States v. Williams*, 636 F.3d 1229 (9th Cir.), *cert. denied* 132 S. Ct. 188 (2011). See *Mossman*, 294 Kan. at 927, 929-30. And *Williams* is again instructive. *In that case*, the Ninth Circuit addressed whether a life term of supervised release for receipt of child pornography was a cruel and unusual punishment. It held that objective indicia suggested society was comfortable with lifetime supervised release for sex offenders because those sentences are common, stating: "According to the

United States Sentencing Commission, in the last five years, federal courts have sentenced 1875 defendants *convicted of child pornography and child prostitution crimes* to lifetime supervised release." (Emphasis added.) 636 F.3d at 1232-33 (citing U.S. Sentencing Comm'n, Federal Offenders Sentenced to Supervised Release 58-59 [July 2010], www.ussc.gov/general/20100722_Supervised_ Release.pdf)."

The Ninth Circuit also held that legitimate penological goals were furthered by such a sentencing practice, stating:

"Rehabilitation and incapacitation are central purposes of the criminal justice system, and they are particularly critical here given the propensity of sex offenders to strike again. Supervised release can further the end of rehabilitating sex offenders. For instance, in this case, the express conditions of supervised release will require Williams to receive sex offender treatment and to avoid situations where he may be tempted to offend again. Relatedly, supervised release helps incapacitate sex offenders by keeping them under the watchful eye of probation officers who may be able to detect problems before they result in irreparable harm to innocent children." 636 F.3d at 1234.

In *Mossman*, we cited this analysis, stating that "[t]he Ninth Circuit's conclusion applies equally to those sentenced in Kansas to [lifetime] postrelease supervision for the crime of aggravated indecent liberties with a child." 294 Kan. at 930. And we extended the analysis to first-time sex offenders over age 18, holding:

"[S]ome of the penological objectives for lifetime postrelease supervision—particularly deterrence, incapacitation, and rehabilitation—are the same whether the offender has committed one or many offenses. Accordingly, we conclude the analysis is persuasive as to both the classification of the crime and its application to the class of first-time sex offenders, especially when we factor in other states' acceptance of lifetime postrelease supervision when an offender has committed a similar crime." 294 Kan. at 930.

The Ninth Circuit's reasoning in *Williams* is more applicable to our Williams' claim because the offenses are so similar. The defendant in the federal case (William Vernon Williams) was convicted of receipt of child pornography for having images of child pornography on his computer. The defendant in the instant case (Steven Williams) was convicted in state court for sexual exploitation of a child for possessing an electronic recording depicting a ·child under the age of 18 engaging in sexually explicit conduct.

Consistent with this court's analysis in *Mossman*, particularly its reliance on the Ninth Circuit's *Williams* decision, we hold in this case that Williams' sentence for lifetime postrelease supervision does not violate the Eighth Amendment.

### LIFETIME POSTRELEASE SUPERVISION: RAPE

In response to this court's show cause order, both parties agree we must vacate Williams' sentence for lifetime postrelease supervision for rape. See *State v. Cash*, 293 Kan. 326, Syl. ¶ 2, 263 P.3d 786 (2011). Accordingly, we hold the district court erred in imposing lifetime postrelease supervision for Williams' conviction for rape as part of sentencing him to an off-grid indeterminate life sentence. That portion of his sentence is vacated.

Affirmed in part and vacated in part.