NOT DESIGNATED FOR PUBLICATION

No. 116,567

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

ROSEMARY J. WELLIVER,
*Appellee*,

and

MARVIN L. DICKERSON, SR.,
*Appellant*,
(METRO TREATMENT CENTER, INC.)
*Intervenor/Appellee.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC A. COMMER, judge. Opinion filed September 1, 2017. Appeal dismissed.

*Marvin L. Dickerson, Sr.*, appellant pro se.

*Morgan O'Hara Gering*, of O'Hara & O'Hara LLC, of Wichita, for appellee.

*Peter J. Orsi, II*, of Wichita, for intervenor/appellee Metro Treatment Center, Inc.

Before ARNOLD-BURGER, C.J., LEBEN, J., and BURGESS, S.J.

*Per Curiam*: Rosemary J. Welliver filed for divorce against her husband, Martin L. Dickerson, Sr. The district court granted the parties' request to bifurcate the financial issues and entered a decree of divorce. After an evidentiary hearing where Dickerson failed to appear, the district court determined Welliver owed Dickerson. Dickerson

1

received the judgment funds. Dickerson appealed and argued: (1) The district court erred in allowing the case to proceed to evidentiary hearing without first holding a settlement conference and therefore lacked jurisdiction; (2) the district court erred when it did not allow Dickerson the right to gather witnesses and other relevant evidence during the evidentiary hearing on February 13, 2015, and therefore violated his due process rights; (3) the district court erred in recognizing the 2001 postmarital agreement, while simultaneously refusing to recognize a 2012 separation agreement; (4) the district court erred when it violated a previous order issued by Judge Harold E. Flaigle; (5) the district court erred when it ignored Welliver's sworn statement indicating her monthly income was $6,800 a month, when it was nearly $22,000 a month; (6) the district court erred when it found Dickerson's expenses did not exceed his income on the domestic relations affidavit (DRA); and (7) the district court erred when it refused to address the appearances of conflict that were repeatedly brought before the court and throughout the course of the case. Dickerson did not raise any of these issues in the district court and failed to explain why they should be considered for the first time on appeal. Furthermore, he acquiesced in the judgment, losing his right to appeal. Accordingly, his appeal is dismissed.

FACTUAL AND PROCEDURAL BACKGROUND

On September 10, 2012, Welliver filed for divorce against her husband, Dickerson. Dickerson filed an answer and a counter petition on October 16, 2012. On August 6, 2014, the district court filed a journal entry of judgment and decree of divorce bifurcating the divorce. The journal entry stated the parties entered into an agreement to bifurcate the divorce and leave the unsettled issues for later determination by the district court at an evidentiary hearing. Those unsettled issues included "financial issues (property settlement issue) involving the division of assets, the division of debts, spousal support, and attorney's fees." The parties agreed the district court had jurisdiction over them.

Metro Treatment Center, Inc. (Metro), was allowed to intervene in this matter. Metro was incorporated on December 13, 1999. Metro is a corporation registered under the Narcotic Treatment Act of 1974 and is allowed by the Drug Enforcement Administration (DEA) to distribute methadone.

Metro applied to the DEA and requested registration as a narcotic treatment program under the Narcotic Treatment Act of 1974. Pursuant to Title 21 of the United States Code § 824(a)(4) (2000), the DEA determined that approval of Metro's application was inconsistent with public interest because Welliver was married to Dickerson, a convicted drug felon. Title 21 of the United States Code § 824(a)(2) states that a registrant's conviction for a felony drug offense is grounds for denial or suspension of a registrant.

In response to the DEA, on October 23, 2001, Welliver and Dickerson entered into a postnuptial property agreement (2001 property agreement). In the 2001 property agreement, Welliver would own a separate business interest in Metro as her sole property. Under no circumstances would Welliver give, bequeath, devise, or transfer any ownership interest whatsoever in Metro to Dickerson. Dickerson expressly agreed that he would not benefit from Welliver's ownership interest in Metro. The DEA and Metro then entered into a memorandum agreement that incorporated the 2001 property agreement. On June 12, 2002, an addendum to the memorandum agreement was signed by Welliver, which further expanded the expressed exclusion of Dickerson from any relationship with Metro.

Metro was allowed to intervene in this action because Dickerson wanted to invalidate the 2001 property agreement. This would invalidate Metro's memorandum agreement with the DEA, which would lead to the suspension of its registration and the seizure of its assets.

On Feburary 13, 2015, the district court found that because the issues centered on whether the 2001 property agreement was valid, the case was 2 1/2 years old, there was a significant number of pending motions, and both parties were present, it was in the interest of judicial economy that the court address whether the 2001 property agreement was valid. At the hearing, Dickerson challenged the validity of clauses 4 and 5 of the 2001 property agreement. These clauses read as follows:

"FOURTH: That the party of the second part agrees that he will not benefit from the ownership interest of the party of the first part in Metro Treatment Center, Inc;

"FIFTH: That this agreement shall be binding on any heirs, legatees, or devisees of the party of the first."

At the hearing, Dickerson testified that he was convicted in 1984 of financing a marijuana distribution operation and served 6 years in prison. Welliver testified that Dickerson could not qualify with the DEA to open a treatment center because of his felony conviction. Welliver also testified that the DEA would not authorize Metro without the 2001 property agreement.

After the hearing, the district court made the following findings: (1) The 2001 property agreement was not a separation agreement because it did not provide for the spouse's property rights in the event of a divorce; (2) the 2001 property agreement was to allow the startup of a business which Dickerson could not own because of his felony conviction; (3) the intent of the parties was to allow for the startup of a DEA regulated business that Welliver would benefit from directly and Dickerson might indirectly benefit from as Welliver's spouse; (4) the agreement was done in contemplation of continued marriage and not divorce; (5) the consideration for the parties was the prospective direct benefits to Welliver and indirect benefits to Dickerson; (6) the provisions of the 2001 property agreement were not for fraud or overreaching, nor were they against public policy; (7) the provisions of the 2001 property agreement were fair, just, and equitable at

4

the time they were entered into and were fairly and understandingly made; and (8) the 2001 property agreement was valid.

A pretrial conference was held on May 18, 2015. At the conference, the district court scheduled a mandatory settlement conference on August 3, 2015, and set the trial to begin on September 10, 2015. Dickerson was present at the pretrial conference and signed the pretrial order.

Dickerson failed to appear at the mandatory August 3, 2015, settlement conference. The district court awarded Welliver $250 in attorney fees and Metro $225 in attorney fees against Dickerson. Dickerson also failed to appear at the September 10, 2015, trial and, therefore, did not offer any evidence or make any objections.

The district court filed a memorandum decision and order on October 29, 2015. In the order, the district court ordered $12,270 to be transferred from Welliver's Equishare IRA to Dickerson's Commerce Bank IRA.

On December 1, 2015, Dickerson filed a motion to reconsider but did not set his motion for a hearing. On February 3, 2016, Welliver responded by filing a motion to dismiss Dickerson's motion and set her motion for a hearing on February 23, 2016. Dickerson filed a written response to Welliver's motion. The motion to dismiss was heard on February 23, 2016, and Dickerson once again failed to appear. The district court dismissed Dickerson's motion to reconsider and awarded Welliver attorney fees in the amount of $125 and Metro attorney fees in the amount of $750. The district court further ordered those fees to be deducted from the judgment granted to Dickerson in the memorandum decision and order.

On March 3, 2016, Welliver paid into the clerk of the district court the sum of $11,395 to satisfy the judgment rendered against her in the district court's memorandum

decision and order. The money paid to the clerk represented the amount Welliver owed Dickerson after the attorney fees for her and Metro were deducted from the judgment. On the same date, the district court ordered the clerk to receive and hold the $11,395 to be distributed to Dickerson upon his written request.

On May 5, 2016, Dickerson filed a written request with the clerk of the district court and asked to be paid the $11,395. Dickerson received the funds the same day.

Dickerson timely appeals.

On appeal, Dickerson argues: (1) The district court erred in allowing the case to proceed to evidentiary hearing without first holding a settlement conference and therefore lacked jurisdiction; (2) the district court erred when it did not allow Dickerson the right to gather witnesses and other relevant evidence during the unplanned evidentiary hearing on February 13, 2015, and therefore violated his due process rights; (3) the district court erred in recognizing the 2001 property agreement, while simultaneously refusing to recognize a 2012 separation agreement; (4) the district court erred when it violated a previous order issued by Judge Flaigle; (5) the district court erred when it ignored Welliver's sworn statement indicating her monthly income was $6,800 a month, when it was nearly $22,000 a month; (6) the district court erred when it found Dickerson's expenses did not exceed his income on the DRA; and (7) the district court erred when it refused to address the appearances of conflict that were repeatedly brought before the court and throughout the course of the case.

RIGHT TO APPEAL

While Dickerson raises numerous issue on appeal, none of them need to be addressed in order to resolve this case. Dickerson's appeal is doomed from the start due to his acquiescence in the judgment of the district court.

6

The acquiescence doctrine establishes that parties who voluntarily accept the benefit or burden of a judgment lose their right to appeal. *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1271, 136 P.3d 457 (2006). Parties waive their right to appeal only if their actions "'"clearly and unmistakably show an inconsistent course of conduct or an unconditional, voluntary, and absolute acquiescence."' [Citations omitted.]" *Uhlmann v. Richardson*, 48 Kan. App. 2d 1, 17, 287 P.3d 287 (2012). "A party's voluntary acceptance of the benefits or burdens of a judgment generally constitutes acquiescence in the judgment and eliminates the right of appeal." 48 Kan. App. 2d at 13. Therefore, if a party actually collects money obtained through a judgment, the party who collected the funds, *i.e.*, the party who accepted a benefit from the judgment, loses the right to appeal. 48 Kan. App. 2d at 13. Because acquiescence involves jurisdiction, it raises a question of law subject to unlimited review. *Alliance Mortgage Co.*, 281 Kan. at 1271.

Here, Welliver was ordered to pay the clerk of the district court the sum of $11,395, to be paid to Dickerson, in order to satisfy the judgment. On May 5, 2016, Dickerson filed a written request with the clerk of the district court and asked to be paid the $11,395. Dickerson received the funds on the same day. Dickerson accepted a benefit from the judgment. See *Uhlmann*, 48 Kan. App. 2d at 13. Dickerson acquiesced in the judgment and lost the right to appeal because he voluntarily accepted the benefit of the judgment. 48 Kan. App. 2d at 13. Since Dickerson lost the right to appeal, this appeal is dismissed.

SUPREME COURT RULE 6.02(a)(5) (2017 KAN. S. CT. R. 34)

While this matter is resolved due to Dickerson's acquiescence in the judgement, his abject failure to comply with Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 34), merits comment. This rule requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. In *State v. Williams*, 298

Kan. 1075, 1085, 319 P.3d 528 (2014), the Supreme Court held that litigants who fail to comply with this rule risk a ruling that the issue is improperly briefed and will be deemed waived or abandoned. Thereafter, the Supreme Court said that Supreme Court Rule 6.02(a)(5) would be strictly enforced. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

Dickerson failed to appear at the September 10, 2015, bench trial. As a result, he did not offer any evidence or make any objections. Dickerson did not raise any of his presented issues below and did not offer an explanation as to why they should be considered for the first time on appeal. Dickerson not only failed to make any objections, he failed to participate in any hearing at which he could have raised the issues which are now the basis of his appeal. As a result, the record is barren of any basis on which Dickerson's appeal might proceed forward. Since Dickerson failed to comply with Supreme Court Rule 6.02(a)(5), all of Dickerson's presented issues are abandoned. See *Williams*, 298 Kan. at 1085.

While there might be a scenario in which an appellant who fails to comply with Supreme Court Rule 6.02(a)(5) might be granted relief, there is nothing in this record which would justify taking that action in this case.

Appeal dismissed.