NOT DESIGNATED FOR PUBLICATION

No. 120,805

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RAYMOND M. DAVIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed October 23, 2020. Appeal dismissed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., STANDRIDGE, J., and MCANANY, S.J.

PER CURIAM: Raymond Davis appeals the trial court's denial of his motion to withdraw his plea. Because Davis is deceased and no exception to mootness applies, we dismiss his appeal as moot.

In September 2009, the State charged Davis with one count of aggravated kidnapping, in violation of K.S.A. 21-3421; one count of aggravated robbery, in violation of K.S.A. 21-3427; one count of aggravated burglary, in violation of K.S.A. 21-3716; and three counts of aggravated assault, in violation of K.S.A. 21-3410. With his criminal

1

history, Davis faced a maximum possible sentence of 787 months in prison. In negotiating a plea agreement, the State extended an offer for a prison sentence of 420 months. Davis attempted to negotiate with the State for a shorter sentence, but the State would not agree to any prison sentence less than 420 months. Davis then rejected the State's offer, preferring to take his chances at trial.

On March 4, 2013, trial began with the parties making a record of the plea offer and then going on to jury selection. By the end of the day, the court empaneled a jury. The next morning, Davis decided to plead guilty to all counts as charged. The court told Davis of the rights he was giving up and confirmed that Davis was not entering his plea because of any threats or promises.

Before sentencing, Davis moved for a downward durational departure to 360 months in prison. The trial court considered the motion at sentencing. The State opposed the motion, requesting the maximum prison sentence of 787 months. The court sentenced Davis to 646 months in prison. Davis did not appeal his sentence.

Davis later challenged his sentence as illegal. The trial court summarily denied his motion. This court affirmed. *State v. Davis*, No. 114,309, 2016 WL 1719930 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1322 (2016).

In July 2016, Davis moved the trial court to withdraw his plea. First, Davis argued that there was excusable neglect to consider his motion out of time because he had received treatment for hyperthyroidism that allowed him to "regain mental capacity and the ability to pursue legal avenues to challenge his convictions." On the merits of the motion, Davis asserted the following:  (1) that his undiagnosed hyperthyroidism caused him to lack the capacity to form the intent to commit the crimes charged; (2) that he was unfairly taken advantage of when he was allowed to enter pleas without the benefit of a plea bargain and could not understand the consequences of the plea because of his

2

undiagnosed medical condition; and (3) that his trial counsel was ineffective for not seeking a competency evaluation before allowing Davis to plead guilty as charged.

At a May 2018 evidentiary hearing on the motion, Davis testified that he could not recall specific conversations he had with his trial counsel about whether he wanted to go to trial or negotiate a plea agreement. Davis also could not remember ever telling his attorney that he had trouble understanding where he was or what was happening. But Davis did testify that he "had to have been exhibiting" behaviors that would have shown his attorney that Davis "was just not there."

Conversely, Davis did remember going to trial and a jury being selected. Davis also recalled writing a note to his attorney the next morning saying that he was about to snap, at which point Davis' attorney requested a recess. But Davis was certain that when he pleaded guilty, he was not aware of the consequences and his attorney did not review the sentencing guidelines with him.

Next, Davis testified about his diagnosis. He explained that medical personnel in the prison discussed possible problems with his thyroid during a routine exam. After several tests, medical providers diagnosed Davis with hyperthyroidism. Davis also testified that he suffered from depression, delusional thoughts, and auditory hallucinations. Davis testified that these cognitive impairments prevented him from moving to withdraw his plea within the statutory time frame. He also testified to suffering from cognitive impairments when he pleaded guilty.

Davis' trial attorney also testified, saying that he never had any reason to believe that Davis was not competent to aid in his own defense or did not understand the proceedings. Also, Davis' attorney never told him that he had to plead guilty or even implied that he should plead guilty.

3

Davis offered no medical expert testimony to establish a link between hyperthyroidism and mental impairment. A letter from the doctor who had diagnosed Davis explained that he would not testify on Davis' behalf because he could not testify that Davis suffered from a mental impairment when he pleaded. "The doctor does not know, will not speculate that Mr. Davis had this condition at the time he entered his plea."

In its order denying Davis' motion, the trial court noted that Davis had a psychological evaluation between his plea and sentencing hearings for sentence mitigation purposes. The court noted that the psychiatrist did not report any of the symptoms that Davis claimed to suffer from in his motion. The court also referred to a letter from Davis' diagnosing physician saying that "there is no medical literature" and no "medical basis for the belief that the disease causes mental instability."

Ultimately, the court ruled that Davis had not shown manifest injustice. Davis' claims rested on the effect of hyperthyroidism on his guilty plea. But Davis failed to show any connection between hyperthyroidism and mental impairment. Thus, the trial court rejected these arguments.

Finally, the court pointed out a flaw in Davis' argument that his hyperthyroidism had prevented him from filing his motion earlier; namely, Davis had previously moved to correct an illegal sentence. The court ruled that Davis had not shown that his hyperthyroidism constituted excusable neglect for filing this motion out of time.

Davis untimely appealed the trial court's denial of his motion to withdraw plea. On April 22, 2019, this court remanded the matter back to the trial court to decide whether an untimely appeal was justified under *State v. Ortiz*, 230 Kan. 733, 640 P.3d 1255 (1982). The trial court ruled that an *Ortiz* exception applied and permitted the appeal to go forward.

4

After remand, Davis' counsel notified the State that Davis was deceased. The State filed notice of Davis' death with this court in November 2019. The State's more recent check of the Kansas Department of Corrections' website confirmed that the notification of Davis' death was correct.

*Does Davis' Death Make His Collateral Attack Moot?*

Because mootness is a doctrine of court policy which was developed through court precedent, appellate review of the issue is unlimited. *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 (2012).

As a rule, Kansas appellate courts do not decide moot questions or render advisory opinions. *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012). The mootness doctrine is one of court policy, under which the court is to "'determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive.'" *Hilton*, 295 Kan. at 849.

An issue on appeal will be dismissed as moot only if it can be shown clearly and convincingly that the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and the judgment would not impact any of the parties' rights. *State v. Williams*, 298 Kan. 1075, 1082, 319 P.3d 528 (2014); see *Mundy v. State*, 307 Kan. 280, 288-89, 408 P.3d 965 (2018).

Because mootness is not a question of jurisdiction, the court-made doctrine is amenable to exceptions. *Montgomery*, 295 Kan. at 841. Appellate courts commonly apply an exception when an issue "'is capable of repetition and raises concerns of public importance.'" *State v. Kinder*, 307 Kan. 237, 244, 408 P.3d 114 (2018). "Public

importance means more than that certain members of the general public are interested in the decision of the appeal from motives of curiosity or because it may bear upon their individual rights or serve as a guide for their future conduct." *State v. Hayden*, 52 Kan. App. 2d 202, 206, 364 P.3d 962 (2015).

In Kansas, defendants' deaths do not automatically abate their direct appeals. On the death of appealing defendants during the pendency of their appeals from a criminal conviction, an appellate court is not required to address all issues on appeal. Instead, we consider whether the issue "(1) is of statewide interest and of the nature that public policy demands a decision, such as those issues that would exonerate the defendant; (2) remains a real controversy; or (3) is capable of repetition." And, thus, we consider only issues that meet one of these three criteria. *State v. Hollister*, 300 Kan. 458, 458-59, 329 P.3d 1220 (2014).

In his appeal, Davis challenges two aspects of the underlying proceedings in the trial court. First, he contends that his plea was not voluntarily and understandingly made and, therefore, the trial court should allow him to withdraw it. Second, Davis asserts that his delay in moving to withdraw his plea was excusable neglect and that withdrawal of his plea was necessary to correct manifest injustice. Neither of these arguments fall within the *Hollister* exceptions to mootness.

The first exception under *Hollister* includes issues that would exonerate a defendant. Procedurally, exoneration is not a possibility here. The death of defendants does not abate all charges *ab initio*, thus effectively resulting in exoneration, when appealing defendants die. *State v. Baker*, No. 119,832, 2020 WL 1649850, at *4 (Kan. App. 2020) (unpublished opinion). Therefore, a favorable ruling for Davis would require us to remand his case to the trial court so Davis could withdraw his plea. See *State v. Frazier*, 311 Kan. 378, 384, 461 P.3d 43 (2020). Another plea agreement is not possible

because Davis is dead. Also, the case could not proceed to trial for the same reason. See *Hollister*, 300 Kan. at 467.

Further, Davis' claims are highly fact-specific in that they relate quite specifically to his hyperthyroidism and his ability to understand the charges and the consequences of the plea. The issue of whether Davis should be allowed to withdraw his plea does not involve a broad policy question or an important and undecided point of law of statewide interest. Thus, the first criteria from *Hollister* does not apply because the issue is not of statewide interest and resolution of the issue would not exonerate the defendant.

Under *Hollister*'s second consideration, we note that the only controversy is if the court should allow Davis to withdraw his plea. Any judgment that could be entered on this point would be ineffectual for any purpose and would not impact any of the parties' rights. See *State v. Tucker*, No. 113,469, 2016 WL 3856982, at *4 (Kan. App. 2016) (unpublished opinion) (citing *Montgomery*, 295 Kan. at 840). Thus, no controversy survives Davis' death. See *Baker*, 2020 WL 1649850, at *6.

Lastly, the issue of capacity to voluntarily and understandingly plead to a charge is generally an issue capable of repetition. But as presented here, Davis' issue turns on the unique circumstances of the state of his mental health when he entered his plea. Specifically, his claim relies on when his hyperthyroidism developed, the level of severity of this condition, and whether it affected his capacity to understand the charges against him and the consequences of his plea. These are fact-sensitive issues peculiar to Davis. Davis' claims are not so capable of repetition that the public policy interest is served by fully addressing them in this appeal. In conclusion, none of the criteria from *Hollister* apply in such a way that Davis' death is an exception to mootness.

On a final note, the rule in *Hollister* addressed direct appeals. 300 Kan. at 465; see also *State v. Salts*, 288 Kan. 263, 265, 200 P.3d 464 (2009) (ruling that defendant's death

7

after his notice of appeal was filed did not render his direct appeal moot); *State v. Burnison*, 247 Kan. 19, 32, 795 P.2d 32 (1990) (holding that "in Kansas the death of a defendant does not abate his direct appeal as it is in the interest of the public that the issues raised on appeal be adjudicated upon the merits"); *State v. Jones*, 220 Kan. 136, Syl. ¶ 1, 551 P.2d 801 (1976) ("Death of an appellant during the pendency of his direct appeal from the conviction of a criminal offense does not abate the appeal."). Despite application of the rule here for safe measure, our Supreme Court has not considered whether an exception to mootness would apply when defendants die during their appeals based on a collateral attack of their convictions.

Nevertheless, this court has held that no exception to mootness would apply when defendants die during their appeals based on a collateral attack of their convictions. In *Kirkland v. State*, 25 Kan. App. 2d 359, 965 P.2d 227 (1998), Henry G. Kirkland sought to withdraw a plea of no contest to one count of aggravated battery as a collateral attack of his conviction after he had exhausted his direct appeal remedies. The trial court denied this collateral attack and then Kirkland died while his appeal of that decision was pending. This court ruled that the death of a prisoner makes a habeas appeal moot. 25 Kan. App. 2d at 360 (citing *McMann v. Ross*, 396 U.S. 118, 90 S. Ct. 395, 24 L. Ed. 2d 303 [1969]). This court declared the following:  "'Since his imprisonment ended upon his death, and there can be no future collateral consequences flowing from his imprisonment, his collateral attack is moot.'" 25 Kan. App. 2d at 360 (quoting *McMillin v. Bowersox*, 102 F.3d 987 [8th Cir. 1996]).

Here, Davis moved to withdraw his plea, as Kirkland did. The result is the same. Because Davis' motion to withdraw plea became moot when he died, his arguments about excusable neglect and manifest injustice need not be addressed.

Appeal dismissed.