NOT DESIGNATED FOR PUBLICATION

No. 127,361

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CASEY STEPHEN MCDOWELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Miami District Court; AMY L. HARTH, judge. Submitted without oral argument. Opinion filed January 30, 2026. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Andrew J. Lohmann*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., HURST, J., and JACOB PETERSON, District Judge, assigned.

PER CURIAM: Defendants should not have a joint trial when their defenses require accusing the other of committing a crime—i.e., when they are antagonistic. But using different trial strategies does not make defenses antagonistic, nor does it mean that codefendants should not be tried together.

Casey Stephen McDowell appeals his convictions of aggravated battery and criminal restraint, primarily arguing that his defenses were antagonistic with his son's

1

defenses—who was a codefendant. As a result, he argues that the trial court erred by holding a joint trial. Finding no error, we affirm.

FACTUAL AND PROCEDURAL HISTORY

*The McDowells and Ballard, a trash collector, had a hostile relationship that led to the McDowells attacking Ballard on his route.*

On October 8, 2020, Casey and Draven McDowell (McDowells), father and son, lived in a neighborhood in Miami County where Terry Ballard worked for L&K Waste Management as a trash collector and drove a trash truck. For reasons that are not important to this appeal, Casey and Ballard had a history of disagreement and tense confrontations.

The altercation at the heart of this case began when Draven drove a dirt bike directly in front of Ballard's truck, stopped, and acted like the bike had run out of fuel. The McDowells and Ballard then had a series of interactions involving Casey's four-wheeler, Draven's dirt bike, and Ballard's truck that culminated with Draven and Casey trying to open the door to Ballard's truck.

Draven then tried to climb into the cab of the truck, so Ballard kicked Draven trying to knock him out of the cab. Casey grabbed both of Ballard's legs, pulled him sideways in his seat, and tried to pull him out of the cab.

After Casey held Ballard's legs, Draven climbed into the truck and repeatedly punched Ballard's face and head for several minutes. At the same time, Ballard reached down and punched the gas pedal, hoping Draven would leave in response. The truck started moving but Draven continued hitting Ballard. Ballard eventually grabbed Draven by his throat. The truck moved around 50 yards throughout the fight and ultimately

2

stopped in a ditch. Draven then got out of the truck. According to Ballard, Draven's dirt bike was "[w]added up in a ball underneath the truck" by the time the truck stopped.

Three officers were dispatched to the scene. Casey and Draven both claimed to law enforcement that Ballard was the aggressor and agreed that Casey held Ballard's legs. Casey claimed that he held Ballard's legs to stop Ballard from kicking Draven.

*Draven and Casey were found guilty at a joint jury trial.*

The State initially charged Casey and Draven in separate complaints. The procedural history that follows is somewhat disjointed because Casey and Draven were not charged together and Casey filed a premature motion to sever before the court had consolidated the cases. But the bottom line is that the trial court granted the State's request to consolidate the cases for a joint jury trial over Casey's and Draven's objection.

At trial, the jury heard testimony from Ballard and two law enforcement officers, viewed law enforcement body cam videos, and viewed 10 video clips from Ballard's dash cam relating to the altercation. Based on that evidence, the State argued, among other things, that Casey and Draven were the aggressors and were harassing Ballard as he simply "tr[ied] to do his job." It likened Casey and Draven to "schoolyard bullies," who worked together to hurt Ballard—a conspiracy between codefendants. Neither Casey nor Draven testified, but Casey attempted to minimize his involvement, arguing among other things that he intervened between Ballard and Draven to prevent harm and property damage. The jury found both Casey and Draven guilty of aggravated battery and criminal restraint. Casey timely appeals.

Additional factual or procedural information will be provided as necessary.

3

Casey primarily argues that his and Draven's defenses were antagonistic. Therefore, he contends, the trial court abused its discretion by denying Casey's motion to sever. He also raises other arguments that we address briefly below. The State argues that the defenses were not antagonistic and that the trial court did not err. We agree with the State.

*We review Casey's arguments for abuse of discretion.*

Whether to consolidate defendants into a single, joint trial or sever them into two separate trials after consolidating is a question of "can" versus "should." Trial courts can consolidate two or more defendants' cases for trial "if the defendants could have been charged together in one complaint." *State v. Aikins*, 261 Kan. 346, 358, 932 P.2d 408 (1997), *disapproved of on other grounds by State v. Warrior*, 294 Kan. 484, 277 P.3d 1111 (2012). Multiple defendants can be charged in the same complaint "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting the crime or crimes." K.S.A. 22-3202(3).

But this appeal focuses on something slightly different: whether Casey and Draven should have been kept together. Severance should occur when a defendant has established that there would be actual prejudice in a joint trial. *State v. White*, 275 Kan. 580, 589, 67 P.3d 138 (2003). Many different factors must be considered when analyzing whether actual prejudice may result from failing to sever the codefendants' trials:

> "'(1) [T]he defendants have antagonistic defenses; (2) important evidence in favor of one of the defendants which would be admissible in a separate trial would not be allowed in a joint trial; (3) evidence incompetent as to one defendant and introducible against another would work prejudicially to the former with the jury; (4) a confession by

one defendant, if introduced and proved, would be calculated to prejudice the jury against the others; and (5) one of the defendants who could give evidence for the whole or some of the other defendants would become a competent and compellable witness on the separate trials of such other defendants.'" *State v. Stafford*, 296 Kan. 25, 38, 290 P.3d 562 (2012).

If actual prejudice would result, severance is required. See 296 Kan. at 38.

If a defendant's motion to sever is denied, the defendant has the burden of establishing on appeal that there was actual prejudice and thus discretion was abused. *State v. Warren*, 302 Kan. 601, 617-18, 356 P.3d 396 (2015). "A trial court abuses its discretion when the act complained of '(1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact.'" *State v. Page*, 303 Kan. 548, 555, 363 P.3d 391 (2015).

*Truly antagonistic defenses sharply conflict with one another.*

Antagonistic defenses are "[t]he most compelling ground for severance." *State v. Myrick*, 228 Kan. 406, 416, 616 P.2d 1066 (1980). Courts are concerned that codefendants in a joint trial will have to not only fend off the State, but also each other. Fighting on more than one front places codefendants at a disadvantage they would not have if they went to trial separately. See *Stafford*, 296 Kan. at 39 (discussing how antagonistic defenses can "turn[] one defendant into a witness hostile to the other defendant").

However, antagonistic defenses between codefendants are, by definition, mutually exclusive. *White*, 275 Kan. at 590. In other words, "'the accounts of co-defendants must be "on a collision course."'" *State v. Van Pham*, 234 Kan. 649, 655, 675 P.2d 848 (1984).

> "'The classic example of intrinsically antagonistic defenses is where both defendants blame each other for the crime while attempting to defend against the State's case.' Short of this type of dichotomy, defenses will not be deemed antagonistic. For example, a dispute over who was the more culpable, such as arguing over who was the triggerman versus the aider and abettor, is not antagonistic. [Citation omitted.]" *White*, 275 Kan. at 590.

See *Warren*, 302 Kan. at 618. Merely different or inconsistent defenses are not antagonistic defenses. *State v. Reid*, 286 Kan. 494, 520, 186 P.3d 713 (2008).

Here, Casey argues "that Draven was the primary aggressor, [that] he could not have anticipated what happened, and that he was trying to stop the fight (and the truck) in holding Ballard's legs." He continues, asserting that because Draven argued a form of self-defense and that he "was only trying to stop the fight," his defense was mutually exclusive with Draven's. But proving antagonistic defenses takes more. *Reid* illustrates why.

In that case, a convenience store manager was shot in the back of the head during a burglary. Both codefendants, Williams and Reid, denied involvement and Reid denied being in the area of the shooting. However, law enforcement's investigation showed calls from Williams' phone in the area of the convenience store at the time gunshots were reported. Williams also testified that he had lost his phone for several hours on the night of the murder and ultimately found it in Reid's car. Reid moved for severance because when Williams' testimony was heard in the context of the cell phone evidence, it indicated that Reid was present for the murder and at the scene, contrary to his defense. See 286 Kan. at 519.

That dispute was not enough to establish antagonistic defenses. See 286 Kan. at 519. The trial court denied the motion to sever and the Supreme Court affirmed. It

6

reasoned that there could be explanations for the contradictory evidence other than Reid's guilt:

> "Reid may not have known that Williams' phone was in his car; and someone besides Reid could have been using it. Most persuasively, records show that the numbers called from Williams' phone directly after the murder were numbers that had often been called previously from his phone, *i.e.,* by him, not Reid. As we held in *White:* 'While there may have been inconsistency in the evidence, there was not a dichotomy in the defenses. As presented, the defenses were not mutually exclusive.' 275 Kan. at 591, 67 P.3d 138." *Reid,* 286 Kan. at 520.

In short, "Williams' testimony about his lost phone, and where he eventually found it, [did] not put his defense on a collision course with Reid's." 286 Kan. at 520.

Casey's and Draven's defenses are not anywhere near as inconsistent—let alone antagonistic—as those in *Reid*, where the Supreme Court rejected Reid's severance arguments. Unlike the testimony from Reid's codefendant that could have potentially implicated Reid with the phone, both Casey and Draven minimized Casey's involvement at trial. Casey argued that he did not intentionally help Draven in the commission of a crime because he "could have never known that these series of events were going to take place" and that his guilt should be considered separately from Draven. Draven also *never even mentioned* Casey in the context of the fight or about Casey holding Draven's feet during closing argument. In fact, Casey himself concedes on appeal that Draven did not accuse him of committing the aggravated battery.

And unlike *Reid* where the jury had to wrestle with Reid saying he was not at the scene despite the implications of Williams' testimony, in closing argument Casey and Draven both argued that Ballard was the instigator or initial aggressor. They also both independently argued that they were trying to prevent Ballard from causing harm.

7

Casey's lawyer did make isolated statements during closing that could be read to accuse Draven of committing an aggravated battery, however. As Casey's lawyer argued, "It's my argument that [Casey] was not intentionally aiding Draven in committing the crime of aggravated battery." But that comment needs to be considered with surrounding statements as context:

> "So one of the instructions you're going to be giving is that a person is criminally responsible for the crime of another if that person intentionally aids the other person to commit the crime. The instruction goes on to indicate that the person is responsible for a crime committed by another person is also responsible for any other crime committed in carrying out or attempting to carry out the crime. *It's my argument that he was not intentionally aiding Draven in committing the crime of aggravated battery.* Back to the beginning of what I said. Casey could have never known that these series of events were going to take place. He could never know that [Draven] would pull in front of his truck, drop his motorcycle, open the door to the truck, that Terry Ballard would begin kicking him and that he would have to go and try to break up the fight. And he said that repeatedly on the video. By the time I got there, they were already well into it. I was trying to steer the truck, I was trying to stop the truck.
>
> "You're also gonna be instructed that Casey absolutely has the right to remain silent. You can't draw any negative inferences into that. We're asking that you consider the evidence as it applies to Casey and not as to Draven and find Casey not guilty of aggravated battery and not guilty of criminal restraint." (Emphasis added.)

Casey's arguments are clearly aimed at distancing Casey from Draven, not accusing Draven of committing the offense. Moreover, Casey's counsel was arguing against the aiding and abetting instruction, which assumes that other involved individuals committed a crime: "A person is criminally responsible for *a crime committed by another* if the person, *either before or during its commission* . . . intentionally aids the other person to commit the crime." (Emphases added.) PIK Crim. 4th 52.140 (2021 Supp.).

Far from being on a collision course with Draven, the jury could have potentially believed *both* Casey and Draven. They could have believed that Draven intervened to prevent property damage and harm when Ballard came after him in the truck, and they could have believed that Casey held Ballard's legs to prevent harm and did not intend to participate in an aggravated battery. Those are not mutually exclusive, antagonistic defenses. Separate trials were not required, and the trial court did not abuse its discretion by trying Casey and Draven jointly.

*The other arguments Casey raises on appeal were not raised before the trial court.*

Casey failed to raise any of his other severance arguments before the trial court. In addition to his argument that his defense was antagonistic with Draven's, Casey argues on appeal that having a joint trial with Draven unnecessarily highlighted the family relationship between the McDowells and led to Draven's actions being unduly attributed to him. He also argues that Draven's statements to law enforcement would have been objectionable hearsay, and as such, would not have been presented to the jury in a separate trial. And similarly, he argues that Draven's admissions to law enforcement "forced [Casey] to admit Draven's actions in opening and closing statements," placing him in the difficult position of "blam[ing] Draven AND try[ing] to defend his (Draven's) indefensible actions."

The State only raises lack of preservation on the familial relationship issue, but an appellee's failure to expressly object to preservation in its brief does not change the result. Preservation is a well-established court-driven or prudential rule that "ensures that trial courts have the first opportunity to address and resolve issues, promotes judicial efficiency, and prevents unfair surprises to the opposing party." *State v. Jelinek*, 66 Kan. App. 2d 158, 163, 577 P.3d 662 (2025). Issues not asserted below generally cannot be raised on appeal. *State v. Williams*, 298 Kan. 1075, 1084, 319 P.3d 528 (2014).

9

Therefore, Casey's arguments other than antagonistic defenses are unpreserved, and we decline to review them.

## CONCLUSION

The trial court did not abuse its discretion when it denied Casey's motion to sever. Casey's and Draven's defenses were not inconsistent, let alone so conflicting as to be antagonistic. And Casey's other arguments were not preserved.

Affirmed.