NOT DESIGNATED FOR PUBLICATION

No. 118,852

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES M. FLETCHER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; PEGGY C. KITTEL, judge. Opinion filed August 30, 2019. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., STANDRIDGE, J., and NEIL B. FOTH, District Judge, assigned.

PER CURIAM: James Fletcher appeals his convictions for aggravated indecent liberties. He argues one of the State's witnesses was unavailable or incompetent as a witness because of her poor memory. In his view, her memory-impaired testimony tainted the evidence at his trial. Thus, he claims the district court abused its discretion in denying his motion for a mistrial. We are unpersuaded and affirm the district court.

The State charged Fletcher with five counts of aggravated indecent liberties with a child under 14 years of age for engaging in lewd fondling or touching with his

1

stepdaughter A.H. The charges against Fletcher were the culmination of an investigation by police that began when her current stepfather, T.M., called the police to report that he and A.H.'s mother, S.H., suspected that Fletcher had sexually abused the girl.

Those two suspected Fletcher sexually abused the girl after Fletcher went to their house on February 9, 2015, and admitted that he was attracted to A.H. S.H. recorded her conversation with Fletcher, including his disclosure about being attracted to teenaged girls and his concern that he would be attracted to A.H. Later, Fletcher made similar admissions to law enforcement officers during the investigation.

Just before his trial, Fletcher asked the court to declare S.H. unavailable to testify. He claimed that the State had disclosed S.H. was "coping with an unknown illness that affects her ability to remember events . . . ." Fletcher claimed the State also reported "it is unknown whether she will be able to testify at the upcoming trial." The defense stated it had tried to contact S.H. but she did not respond. In the alternative, Fletcher asked the court to hold a hearing to determine the extent of her illness and how it related to her ability to testify.

When the motion was heard, the defense told the court that it now had S.H. under subpoena, planned to call her as a witness at trial, and was withdrawing its motion.

Fletcher then renewed his motion to suppress evidence. He alleged that during S.H.'s recorded interrogation of him, she held a firearm to his head, and he surrendered his cellphone and its passcode to S.H. He argued he could not provide valid consent for a search and so the evidence collected from his cellphone should therefore be suppressed.

The district court heard testimony from T.M., S.H., and Fletcher on his renewed motion to suppress. The court also listened to S.H.'s recording of Fletcher's disclosures. The court found Fletcher's testimony incredible. It further found "[t]he evidence

2

presented [at the hearing], to me, made it clear that the victim's mother did not show a weapon to Mr. Fletcher," and denied Fletcher's motion to suppress.

At trial, Fletcher maintained that S.H. coerced his statements at gunpoint.

*We recount portions of the evidence because of Fletcher's claims on appeal.*

We offer summaries of several of the trial witnesses to show that the prosecution was not based just on S.H.'s testimony.

The State first called the victim, A.H., who was then 16 years old. She provided detailed testimony that Fletcher began fondling her breasts when she was 11 years old and continued until around January 2015 when she was 13. Fletcher would approach her at night when she was sleeping or trying to sleep. He would lift her nightshirt, touch her, and rub her breasts while talking to her about her dreams. A.H. was awake when Fletcher did this—or would be awakened by him doing this—but she would pretend to be asleep and dreaming because she was scared and confused and did not know what would happen if she revealed she was awake.

Through A.H.'s testimony, the State admitted into evidence three recorded conversations with A.H.—one with her family counselor and S.H., one with a police detective, and one with Cheryl Smith, a forensic interviewer at Sunflower House, a child advocacy center. These recordings revealed that A.H. first disclosed she had dreams of someone touching her but then in the morning she could not remember if they were real. A.H. said she had the dreams a lot, but only at Fletcher's house. A.H. eventually disclosed that Fletcher touched her by lifting up her shirt and rubbing her breast area. A.H. also disclosed she thought she wanted the encounters to be dreams—and tried to pass them off as dreams—so she would not have to tell anybody.

3

After the first time Fletcher touched her in this way, A.H. said she remembered not knowing what to do—whether to tell someone else or pass it off as a dream—"and I chose the latter." She did not want to tell people about the abuse because Fletcher was the first stable father figure she and her brother had, and "it would almost be selfish to take that away from him." A.H. testified that the encounters with Fletcher were not dreams and they really happened.

The State called Rachel Scattergood, a police officer who came to the house. She spoke with S.H. who reported that her ex-husband, Fletcher, molested her 13-year-old daughter, A.H. At that point, Scattergood took Fletcher to another part of the house to interview him and recorded his statement. This recording was admitted into evidence.

Fletcher at first asked Scattergood if she listened to the recording S.H. made of his earlier conversation with S.H. Scattergood said she would listen to it if he wanted her to, but she was still going to ask him some questions. Fletcher then disclosed that he "had a problem" and was attracted to teenaged girls and their body type, and he was worried he would become attracted to A.H. He said that he told S.H. a "longer version of this" information.

Fletcher first told Scattergood he had not touched A.H.'s "sexual parts," but upon more specific questioning by her about A.H.'s vagina or breasts, he said it was possible. He said he had incidental or accidental contact with A.H.'s breasts. He admitted that during this accidental contact, he wanted to touch them because he was attracted to her. Fletcher corrected himself, "She's a kid. It's not an attraction. I can't explain it." Fletcher also disclosed there were times he thought if he were caught, he would get in trouble— such as when he cuddled A.H. in bed, "That's why we're here. I have these urges or impulses or desire, I don't know."

Scattergood asked Fletcher if he had any inappropriate photos of A.H. on his phone. He replied, "I have a lot of pictures of [A.H.], so probably. . . . Nothing naked." Scattergood asked if A.H. was undressed in any of the photos. Fletcher answered after a pause, "Um, I don't think so." Scattergood asked him to explain what was inappropriate about some photos of A.H., and Fletcher said she might be in her underwear.

Fletcher gave Scattergood permission to look through his phone. There were photos of A.H. on his phone, which showed A.H. in a form-fitting, low-cut shirt or dress, from behind, and lying face down on a bed wearing only a t-shirt that came down to her waist or hips and underwear, showing "an under-aged butt." Fletcher told Scattergood that the photos were of A.H. These photos were admitted into evidence.

Cheryl Schoenberger, the family's counselor, testified for the State. She began working with the family—including Fletcher— about one week earlier. When she arrived at the house for a prearranged appointment, she found S.H., T.M., and Fletcher. After hearing about the situation, she suggested they call the police. Schoenberger collected both children from school and told A.H. about Fletcher's disclosure that he was attracted to teenaged girls.

Several law enforcement officers testified that Fletcher told them S.H. wanted to contact police because of his attraction to teenaged girls.

*The issues in this appeal center on S.H.'s testimony.*

When the State called S.H. to testify, she discussed the text messages she and Fletcher exchanged in which he asked to come to the house because he needed to talk to her. These texts were admitted into evidence without objection. S.H. also gave detailed testimony about Fletcher coming to her house on February 9, 2015, including his uncharacteristically emotional and erratic behavior. She recalled retrieving her gun. She

then returned to the living room to have Fletcher repeat what he told her so she could record it. This recording was admitted into evidence. S.H. also testified about nonverbally communicating to T.M. that he should get his gun, and she described playing the recorded conversation for T.M. and Fletcher when she went outside.

S.H. testified that she reviewed the contents of Fletcher's cellphone after he opened it and gave it to her, and how she found "extremely inappropriate pictures of A.H." S.H. testified about the time line of events as they unfolded throughout the rest of the day: Schoenberger's arrival; calling the police; sending Schoenberger to pick up the children after school; and finally, recording the conversation with A.H. and Schoenberger present. This recording was admitted through A.H.'s testimony.

There were several questions on direct examination that S.H. could not fully answer. She could not recall, for example:

- The exact date the police came or who called them;
- what she said to Fletcher when she returned to the living room after getting her gun; and
- what she said to T.M. when he returned to the living room after getting his gun.

*S.H. under cross-examination*

Under cross-examination, S.H. acknowledged she talked to Fletcher before their recorded conversation. She could answer questions about when she started recording, and testified she thought she accidentally shut it off but then kept recording. She answered several questions about her gun and concealed carry class. S.H. answered the defense's questions about Fletcher being upset when he arrived at the house on February 9, 2015, and where he sat in the living room. S.H. agreed with defense counsel that A.H. never reported anything sexually inappropriate between her and Fletcher before February 9,

6

2015. She also agreed that she began family counseling with Schoenberger for reasons other than any sexual misconduct, and specifically to help the family come together. S.H. testified she did not know anything inappropriate was going on until Fletcher went to her house and told her. She acknowledged she spoke to Schoenberger about Fletcher's disclosure as soon as she got to the house that day and spoke with A.H. about it that same day, too. S.H. continued to answer the defense's questions about the events of that day and her decisions to record the conversations with Fletcher and A.H.

There were several questions on cross-examination that S.H. could not fully answer. She could not recall, for example:

- Whether she ever showed her gun to Fletcher before that day, but she believed she would have;
- the length of her conversation with police after A.H.'s interview at Sunflower House, what they asked her, what their names were, or whether they did a follow-up interview with her or T.M. at their house; and
- that officers arrived at the house first and then detectives arrived later.

Defense counsel used a transcript to refresh S.H.'s recollection about a statement she had made to law enforcement officers. At first, she had told the officers of her doubts that Fletcher and A.H. had ever really been alone together. After hearing the transcript, she clarified her statement by explaining that since so many other family members lived in Fletcher's house, there was a reduced opportunity for the two to be alone. This demonstrates that S.H.'s memory could sometimes be refreshed.

S.H. was sure she talked to police about the photos of A.H. on Fletcher's phone, but she did not remember it. Defense counsel again used a transcript to refresh her recollection. S.H. then remembered talking to police about the pictures of A.H. on Fletcher's phone. S.H. testified that she and the officer were talking about A.H., and that the time frame of the conversation was before A.H. returned from school. S.H. recalled

7

that the police would not arrest Fletcher based on the pictures, alone, because there was nothing criminal about them. S.H. recalled being distressed about the pictures on Fletcher's phone. She acknowledged that she and the officer both stated it was possible Fletcher had done nothing beyond having pictures of A.H. on his phone since he came and talked to S.H. first. But S.H. also testified that—at that point in the day—she had not yet talked to A.H.

*Midtrial motions to declare S.H. unavailable and for a mistrial*

Fletcher moved to have S.H. declared unavailable to testify and for a mistrial. He argued that S.H.'s testimony constituted inadmissible hearsay and violated his constitutional right to confront her as a witness against him. He argued that "because of the extreme prejudice of this inadmissible evidence now having been placed in front of the jury," the district court should declare a mistrial. Fletcher complained that S.H. "overwhelmingly stated that she did not know, did not recall, [or] could not remember the vast majority" of her previous statements made throughout the investigation. Fletcher argued that the testimony of other witnesses was admitted "contingent on the fact that S.H. would be able to testify." He argued that he could not confront S.H. as the complaining witness in the case.

The defense acknowledged that the State had told it of S.H.'s reported memory issues about five weeks before trial. The defense argued that only the State had the ability to ask about S.H.'s memory issues and should have prevented this situation. The State argued that it did not have any medical records, and the defense could have used a business records subpoena for S.H.'s medical information. The State reminded the court that the defense requested a hearing on this issue before trial, but then withdrew that motion.

8

The State argued that S.H. was available for cross-examination. She testified at length about the subject matter of her interviews with the police and remembered the police being present. She also remembered other details about the events and the investigation. The State acknowledged that S.H. could not remember the specific interviews with the police and suggested the defense could cross-examine her and then make whatever arguments were appropriate about her testimony to the jury. There was no sign that S.H. was trying to avoid testifying. Her testimony was basically about her experience and what was happening at the time, her demeanor, and the impact. The State also argued that because several conversations were recorded, the defense could get them into evidence through other witnesses.

The details of the court's ruling on these motions is important for our decision. The district court acknowledged that the methods used to refresh S.H.'s memory, such as reading transcripts and listening to a recording, did not always work. The court observed that S.H. testified on the previous day of trial for about an hour and a half and "gave great detail" about the therapist, her marriage, where she lives, who her children are, that she and Fletcher were texting each other, and that he said he had something to tell her and wanted to come over during the middle of the work day. "She was very clear on all that," as well as the recording she made of Fletcher. The district court observed that "on cross-examination then regarding other recordings, she said she has no memory," and that she answered detailed questions about some things, but not others. The court found that Fletcher was protected against a hearsay problem because the conversations were recorded and could be admitted into evidence with the proper foundation.

The district court found S.H. was available as a witness and denied Fletcher's motions to find her unavailable and for a mistrial.

9

*We conclude with a review of the closing arguments and sentencing.*

In closing arguments, the State acknowledged that S.H. was not a credible witness and encouraged the jury to look at how the evidence supported her testimony. Fletcher did not address S.H.'s memory issues in his closing. He argued his statements resulted from coercion by S.H. pointing a gun at him. He also argued S.H. had severe psychological and anger management issues. The jury found Fletcher guilty on all five counts of aggravated indecent liberties with a child.

After denying Fletcher's motion for a new trial, the court sentenced Fletcher to 5 concurrent 25-years-to-life sentences in prison. We turn now to his issues on appeal.

*We will not address Fletcher's issue not raised in the court below.*

Fletcher contends for the first time on appeal that S.H. was not competent to testify at his trial, and her testimony "infected" the trial and impaired his defense. We review such a question for an abuse of discretion. *State v. Cameron*, 300 Kan. 384, 391, 329 P.3d 1158 (2014). We deem this point waived for want of briefing.

Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34) requires an appellant to explain why an issue not raised below should be considered for the first time on appeal. In *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), the Supreme Court held that litigants who fail to comply with this rule risk a ruling that the issue is improperly briefed, and the issue will be deemed waived or abandoned. The Supreme Court later held that Rule 6.02(a)(5) would be strictly enforced. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

Throughout his brief on this point, Fletcher neither explains how his challenge to S.H.'s competency to testify helps his case, nor does he cite any authority in support of

his fundamental rights exception argument. He recounts long portions of her testimony—that is to say what she could and could not remember, but he never explains the legal significance of these memory lapses. After all, when viewed in the context of the entire trial transcript, S.H.'s testimony, at best, merely corroborated what others had said or what had been recorded. Because Fletcher has failed to explain why this issue can be raised for the first time on appeal, we hold that Rule 6.02(a)(5) requires us to dismiss this issue.

*We see no error of fact by the trial court.*

In his next issue, Fletcher argues that the district court abused its discretion based on an error of fact and was unreasonable when it denied his request to declare S.H. unavailable as a witness. The State disagrees and argues that S.H. remained qualified to serve as a witness and was available for cross-examination and hearsay purposes, despite her memory issues.

We must begin, as always, with the applicable statute. Under K.S.A. 60-459(g), a witness can be unavailable for many reasons, including if the witness is

"(1) exempted on the ground of privilege from testifying concerning the matter to which his or her statement is relevant, or

"(2) disqualified from testifying to the matter, or

"(3) unable to be present or to testify at the hearing because of death or then existing physical or mental illness, or

"(4) absent beyond the jurisdiction of the court to compel appearance by its process, or

"(5) absent from the place of hearing because the proponent of his or her statement does not know and with diligence has been unable to ascertain his or her whereabouts."

Fletcher argues that S.H. was unavailable under K.S.A. 60-459(g)(3) because she was unable to testify due to a mental illness.

11

This question is also reviewed for an abuse of discretion. *State v. Stafford*, 255 Kan. 807, 812, 878 P.2d 820 (1994). A judicial action constitutes an abuse of discretion if

- no reasonable person would take the view adopted by the trial court;
- it is based on an error of law; or
- it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

An abuse of discretion occurs if discretion is guided by an erroneous legal conclusion or goes outside the framework of or fails to consider proper statutory limitations or legal standards. See *State v. Collins*, 303 Kan. 472, 477, 362 P.3d 1098 (2015). The party asserting the trial court abused its discretion bears the burden of showing that abuse of discretion. *State v. Robinson*, 303 Kan. 11, 90, 363 P.3d 875 (2015). Fletcher argues that the district court abused its discretion based on an error of fact, which made its denial of his motion to declare S.H. unavailable unreasonable.

The record reveals that S.H. testified she had been having memory issues, and her memory differed from day to day. S.H. also testified she was diagnosed with a major depressive disorder and anxiety, which she believed impacted her ability to function as a parent. She was sure she *had* sought treatment for her memory issues, but the record does not establish that treatment was present or ongoing. And the record does not establish a link between her psychiatric diagnosis and her memory issues.

The closest case on point for this claim is *Stafford*. In *Stafford*, a witness for the State had incurable liver cancer. Her pain management regimen included the use of narcotics and tranquilizers, which caused hallucinations and short-term memory loss. The district court decided that she was unavailable as a witness and our Supreme Court affirmed. 255 Kan. 813-14. We distinguish this case. Unlike *Stafford*, Fletcher's claim that S.H. was unavailable under K.S.A. 60-459(g)(3) is unsupported by medical

12

testimony. We note that Fletcher withdrew his pretrial motion to declare S.H. unavailable, which prevented the district court from hearing medical evidence and testimony to support this claim.

Even so, Fletcher does cite portions of the trial transcripts to show S.H.'s poor memory, but this is not persuasive given S.H.'s general ability to answer questions in a fairly detailed manner. And we note the district court's finding that S.H. was hostile to the defense and her memory was selective.

It is true that in some cases the extent of the claimed memory loss may have legal significance. When a witness claims a degree of memory loss so that he or she essentially refuses to answer any questions, then they are unavailable for cross-examination. *State v. Lomax & Williams*, 227 Kan. 651, 657-61, 608 P.2d 959 (1980). But a demonstration of selective memory does not render a witness unavailable. See *State v. Stafford*, 296 Kan. 25, 49, 290 P.3d 562 (2012); *State v. Manning*, 270 Kan. 674, 690, 19 P.3d 84 (2001). Here, the district court decided S.H. had a selective memory and the record bears this out.

Similarly, if a witness claims memory loss on an earlier statement but is still given a chance to explain it, the foundation is adequate to admit the statement for impeachment purposes. *State v. Stinson*, 43 Kan. App. 2d 468, 478-80, 227 P.3d 11 (2010). A review of the record supports the district court's finding.

On her first day of testimony, S.H.'s memory lapses were generally evenly distributed no matter if the question posed was from the State or the defense. Objectively, her lapses were not material for either party's presentation of their case. As cross-examination became more contentious, S.H.'s memory lapses increased. Even so, the record does reveal the defense could refresh S.H.'s recollection on at least two occasions to draw out independent responses from her testimony. While S.H.'s memory issues may have become more selective as her testimony wore on—especially on her second day of

testifying—she was given opportunities to explain the lapses so the foundation was adequate for the defense to admit her statements for impeachment purposes.

Ultimately, our reading of the record reveals a lack of evidence to support Fletcher's contention that S.H. was unavailable because of an existing mental health issue. He has neither met his burden to show the district court made a mistake of fact nor acted unreasonably in determining S.H. was available as a witness. We see no reason to reverse here.

We find that we agree with the State that all of this may be harmless error. Fletcher does not argue that the evidence against him could not prove beyond a reasonable doubt that he was guilty of aggravated indecent liberties with a child. Issues not adequately briefed are deemed waived or abandoned. *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 825 (2015). Even so, a thorough look at the evidence is warranted to determine whether the State met its burden to prove there was no reasonable possibility that allowing S.H. to be a witness affected the verdict.

The record on appeal—even without S.H.'s testimony or her recorded interview with Fletcher—shows that the State met its burden. The State argues persuasively that excluding S.H.'s testimony would not have changed the outcome of the trial because her testimony was of a "corroborative nature," and there were no facts in her testimony not reinforced by other sources of evidence.

S.H. was the fifth witness called by the State. Before S.H.'s testimony, the jury heard from A.H., T.M., Scattergood, and Schoenberger. All of these witnesses were present on February 9, 2015, and testified about their own experiences that day or before that day. After S.H. testified, the jury heard from Detective Christopher Moore, who interviewed Fletcher. Detective David Garcia also interviewed Fletcher. Detective Leigh Ann Siebert testified about her interview of A.H. as part of the investigation into the

14

allegations against Fletcher. Cheryl Smith also testified about her interview with A.H. at Sunflower House.

At trial, Fletcher denied touching A.H. the way she described. But the jury also heard Fletcher's own words on the recorded interviews. In the interviews, Fletcher consistently disclosed throughout the investigation that he was attracted to teenagers or had "a problem being attracted to teenaged girls." He told the detectives he talked to A.H. when she was dreaming. Fletcher also said that he was concerned A.H. was "at risk" being around him. He said if he were allowed to be around A.H. again, his visits should probably be supervised, "just to be safe." When the detective asked Fletcher, "safe from what?" Fletcher responded, "Me."

Fletcher could not explain to detectives the photographs of A.H. on his phone. He said it was probably an "attraction" thing. He said he lay down with A.H. on the bed and might have lifted her shirt up. A.H. did not know he took pictures of her on the bed. He admitted he intentionally took pictures of her on the bed, and he also admitted it was inappropriate. He acknowledged several times that the pictures were inappropriate because they showed A.H.'s underwear.

Fletcher said he "felt that [S.H.] needed to know" about his attraction to teenaged bodies. If he had to do it over, he would tell S.H. again because it was important and it would have been worse if he had waited to tell her until after he got help. Fletcher also told detectives he had thoughts of suicide, which were driven by being attracted to teenaged girls.

None of this information came from S.H.'s testimony or her recorded conversation with Fletcher. This evidence did not depend on S.H.'s ability to testify. We are persuaded that the State proved beyond a reasonable doubt that any error in finding S.H. available to

15

testify did not affect the outcome of the trial given the entire record. There is no reasonable possibility that the error affected the verdict. Any error was harmless.

*Denial of the mistrial is not error.*

In his final issue, Fletcher contends that the trial court abused its discretion when it denied his motion for a mistrial. He argues that the district court abused its discretion in its factual finding that S.H.'s memory issues were selective. He contends that she had a medical condition that caused her memory loss and therefore had no independent memory of any of the relevant events about which she testified. He also argues that the district court's decision was unreasonable based on this mistake.

We have already determined that the court did not abuse its discretion in finding S.H. was available as a witness. This means there can be no mistake of fact that can serve as grounds to grant Fletcher's motion for a mistrial. We deny Fletcher any relief on this issue.

Affirmed.